JONATHAN P. PALMER

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Cumberland.· Opinion January 12, 1899.

*Arrest without warrant.   Railroads.   Passenger.   Mileage Book.   Damages*
*R. S., c. 51, § 78 ; c. 133, §§ 14, 18.*

If a private individual procures the arrest of an innocent person for a misdemeanor, by an officer without a warrant, he cannot justify by showing that he acted in good faith, without malice, and upon a belief of guilt founded upon reasonable grounds.

The defendant's conductor caused the plaintiff to be arrested by a constable without warrant, charging him with "fraudulently evading the payment of his fare." The offense charged was a misdemeanor only, and the plaintiff was, in fact, not guilty.   *Held;* that the defendant cannot justify the arrest on the ground that the plaintiff's conduct afforded the conductor reasonable grounds to believe, and he did believe, that the plaintiff was guilty.   *Held;* also that the constable had no lawful authority to arrest the plaintiff without warrant, on information merely, the plaintiff not being "found violating any law of the state."

The plaintiff, after being arrested, was taken immediately before a municipal court, where the conductor made a complaint under oath against him for "fraudulently evading the payment of his fare."   The plaintiff pleaded "not guilty."   He then paid his fare and the costs of prosecution to the judge. The conductor, in writing, acknowledged "complete satisfaction," and the plaintiff was thereupon discharged.   *Held;* that by these proceedings, the plaintiff did not waive or release his claim against the defendant for the unlawful arrest, and the plaintiff was not thereby barred of his remedy.

When a plaintiff claims punitive damages, or damages for his injured feelings, the spirit and conduct of the defendant may be inquired into, to enhance or aggravate, and as well, the plaintiff's own conduct, and the provocation by him, if any, to mitigate the damages.

The plaintiff was traveling upon a non-transferable mileage book issued to him by the defendant company upon condition assented to in writing requiring him, among other things, and as a means of enabling the train conductors to identify the owner, to obtain his signature thereon.

The conductor, as a means of identification, asked the plaintiff three times if the name on the mileage book exhibited by the plaintiff was his name, and if the signature was his, and each time the plaintiff refused to give the informa-

tion desired, telling the conductor that it was "none of his business." *Held;* that the inquiry of the conductor was a reasonable one, and that it was the duty of the plaintiff to make a frank and truthful answer.

*Also;* that the plaintiff's conduct was willful, obstinate, evasive, and was well calculated to give the conductor reason to believe that he was attempting to ride upon a ticket, not his own; and that while these circumstances do not justify the arrest, they are entitled to full consideration on the question of damages.

The damages to the plaintiff in his person, and for loss of time and expenses were little more than nominal.    *Held;* that under all the circumstances, the court is of opinion that a new trial should be awarded unless the plaintiff will remit all of the verdict $550 in excess of ten dollars.

ON MOTION AND EXCEPTIONS BY THE DEFENDANT.

This was an action of trespass for false imprisonment. The plea was the general issue with a brief statement justifying the imprisonment, on the ground of a lawful arrest of the plaintiff for fraudulently evading the payment of his fare as a passenger on one of the defendant's trains.

There was evidence tending to show:

That at the time alleged the plaintiff was a passenger on the defendant's train from Rockland to Brunswick.

That in payment of his fare he tendered to the defendant's conductor, Jones, a mileage book, which contained as a part of the contract, signed by the party to whom it is issued, the following among other provisions:

"That it is good only for the person in whose name it is issued, and if presented by any other person, the right to any remaining rides to which the purchaser might have been entitled shall be forfeited, and the conductor shall be authorized to take up this ticket and return the same to the general ticket office as forfeited, and conductors are authorized to obtain the signature of holder of the ticket for identification."

That the mileage book tendered to said Jones purported to be signed "Jona. P. Palmer."

That said Jones was not personally acquainted with the plaintiff.

That said Jones exhibited the signature to the plaintiff and asked him if that was his signature, but that he refused to say that

it was, and persisted in doing so, and in refusing to identify himself in any other manner and left the train at Brunswick without paying his fare.

That after leaving the train at Brunswick said Jones caused the plaintiff to be arrested by one Norman, a constable of Brunswick, for fraudulently evading the payment of his fare, claiming that he was so authorized as provided in R. S., c. 51, § 78, as follows:— "Whoever fraudulently evades payment by giving a false answer, or by traveling beyond the place to which he has paid, or by leaving a train without paying, forfeits not less than five, nor more than twenty dollars, to be recovered on complaint:

That said Jones immediately made complaint to the judge of the Municipal Court of Brunswick, who issued a warrant thereon, and whereupon proceedings took place, the record of which is as follows: ·

"CUMBERLAND, SS.    At the Municipal Court for the Town of Brunswick in the County of Cumberland holden at the Municipal Court Room in said Brunswick on the tenth day of June A. D. 1896.

"Wm. F. Jones of Lewiston in the county of Androscoggin on the tenth day of June A. D. 1896 on behalf of said State on oath complained to the judge of said court that Jonathan P. Palmer on the tenth day of June A. D. 1896 at said Brunswick in the county of Cumberland fraudulently evaded the payment of his fare to Wm. F. Jones conductor for the Maine Central Railroad Co., against the peace of said State and contrary to the form of the statute in such cases made and provided.

"And now the said respondent is brought into court upon a warrant issued in the complaint aforesaid for examination thereon and said complaint is read to Jonathan P. Palmer and he pleads and says he is not guilty.

"Whereupon the complainant acknowledged satisfaction in writing as follows, to wit:—

Brunswick, Me., June 10th, '96.
To whom it may concern:

"I hereby acknowledge complete satisfaction to Jonathan P.

VOL. XCII.    26

Palmer for evading his railroad fare as per my complaint before F. E. Roberts judge of the Municipal Court of Brunswick of this date.                                                W. F. JONES.

"The defendant paying the costs of prosecution taxed at three & 37-100 dollars it is considered and ordered by the court that the said Jonathan P. Palmer be discharged.

Attest:                          FRANK E. ROBERTS, *Judge.*"

The defendant seasonably requested the presiding justice to give the jury the following instructions:

1. "The conductor had a right to ask plaintiff's name and to ask if the name signed to the mileage was his, and it was the plaintiff's duty to answer the questions truly."

2. "If the jury find that Norman was an officer when he arrested the plaintiff and that Jones, within a reasonable time, made oath to the complaint before a magistrate having jurisdiction of the offense, alleged in the complaint, and thereupon a warrant was issued by the magistrate upon which the plaintiff was held by the officer and was brought before the magistrate to answer to the complaint, this action cannot be maintained."

3. "That the proceedings before the magistrate as shown by the copy of the record put in evidence by the plaintiff are a bar to this action, and it cannot be maintained."

But the presiding justice refused to give each requested instruction, and to each refusal, the defendant seasonably excepted and his exceptions were severally reserved.

The foregoing satisfaction thus acknowledged by the complainant is authorized by R. S., c. 133, § 18, which is as follows: "When a person has recognized or is committed by a magistrate, or is indicted for an assault and battery, or other misdemeanor, for which the party injured has a remedy by a civil action, except felonious assaults, assaults upon or resistance of an officer of justice in the execution of his duty, and assaults and batteries of such officers, if the injured party appears before the magistrate or court, and in writing acknowledges satisfaction for the injury, the court, on payment of all costs, may stay further proceedings and

discharge the defendant; the magistrate may discharge the recognizance, supersede the commitment by his written order, and discharge the recognizance of the witnesses."

*J. E. Hanly and J. F. Libby; Levi Turner; T. J. Boynton*, for plaintiff.

Counsel argued that the first request for instructions was given; and the second request was properly refused.    To justify an arrest without warrant for a misdemeanor, even by a constable, the offender must still be found in the act of committing the offense. The statute, R. S., c. 133, § 4, has not changed the rule of the common law in this particular.    *McLennon* v. *Richardson,* 15 Gray, 74.

The defendant had no right to detain the plaintiff.    The only claim it had against him, under any circumstances, was a civil claim for the payment of fare.    Whatever regulation the defendant company may rightfully make as to its mileage or other tickets, it can have no lawful regulation whereby it may detain a passenger for any time, however short, without due process of law.    *Lynch* v. *Met. R. R. Co.*, 90 N. Y. 77, (43 Am. Rep. 141).

Other cases of false imprisonment: Bigelow on Torts, p. 136, (2nd Ed.); *Bowditch* v. *Balchin,* 5th Ex. 378; *Baynes* v. *Brewster*, 2 Q. B. 375; 2 Addison on Torts, 802, and cases there cited.

Proceedings in Brunswick Municipal Court not a bar: Bigelow, Estoppel, pp. 98, 100; *Petrie* v. *Nuttall*, 11th Ex. 56; *Corbley* v. *Wilson*, 71 Ill. 209, (22 Am. Rep. 98); *Buttrick* v. *Holden*, 8 Cushing, 233; *Duchess of Kingston's Case*, 2 Smith's L. Cases, 679 (6th Eng. Ed.)

The plaintiff, therefore, is not estopped by judgment, neither can he be held to be estopped by his conduct.    The payment of money by the plaintiff to the court at Brunswick was made under duress of imprisonment by an abuse of legal process.    The criminal process against the plaintiff was instituted for the purpose of extorting money from him in settlement of a civil claim.    Such an arrest is false imprisonment by all who directly or indirectly procured the same or participated therein for any such purpose. *Hackett* v. *King,* 6 Allen, 58; *Taylor* v. *Jaques*, 106 Mass. 291.

*J. H. and J. H. Drummond, Jr.*, for defendant.

The right to issue a ticket which is not transferable necessarily carries with it the right to require the identification, in a reasonable manner, of the party producing it with the party to whom it was issued.    When a particular method of identification is made a condition precedent to the validity of the ticket, the courts have invariably held that method must be observed by the holder of the ticket, and in case it is not that the conductor could rightfully refuse to accept the ticket.    Woods' Law of Railroads, § 347, p. 1395; *Cody* v. *R. R. Co.*, 4 Sawyer, 114; *R. R. Co.* v. *Bannerman*, 15 Ill. App. 100; *Boylan* v. *R. R.*, 132 U. S. 149; *Mosher* v. *R. R.*, 127 U. S. 390; *Cloud* v. *R. R.*, 14 Mo. App. 136; *Edwards* v. *R. R.*, 81 Mich. 364, (21 Am. St. Rep. 527); *Abrams* v. *R. R.*, 83 Tex. 61; *Bowers* v. *R. R.*, 158 Pa. St. 302; *Bethea* v. *R. R.*, 26 So. Car. 91; *Rawitzky* v. *R. R.*, 40 La. Ann. 47; *R. R.* v. *Anderson*, 90 Va. 1.

It is not a question as to the reasonableness of rules and regulations but as to the construction of a contract.    And the parties are bound by the contract, as construed by the court, and any violation of it by the holder of the ticket forfeits his right to use it. Cases *supra*, some of which are cases of identity on return tickets.

That he was not asked to sign his name as a means of identification does not help the plaintiff, for he did not offer to identify himself in that way, but absolutely refused to identify himself at all.    As was said by the court in *Abrams* v. *R. R.*, 83 Texas, 61: "The identification of the holder of the ticket as the original purchaser is the foundation of the defendant's right to contract to carry him only, because the carrier would be under no obligation to carry another person on such a ticket."

This ticket was "good only for the person in whose name it is issued" and "conductors are authorized to obtain the signature of holder of the ticket for identification."    The provisions necessarily imply that the plaintiff, when he offered his ticket should show, if requested, that he was the "person in whose name it (the ticket) was issued," and if he refused to do so he was not entitled to ride upon it.    In principle it is exactly similar to *Ripley* v. *R. R.*, 31

N. J. L. 388; *Bethea* v. *R. R.*, 26 So. Car. 91; *R. R.* v. *Wysor*, 82 Va. 250; *Downs* v. *R. R.*, 36 Conn. 287, (4 Am. Rep. 77); *Abrams* v. *R. R.*, 83 Tex. 61; *R. R.* v. *Bannerman*, 15 Ill. App. 100; *Edwards* v. *R. R.*, 81 Mich. 364; *Mosher* v. *R. R.*, 127 U. S. 390; *Boylan* v. *R. R.*, 132 U. S. 146.   See also *Burnham* v. *Grand Trunk Ry.*, 63 Maine, 298.

The third requested instruction should have been given.   The proceedings before the magistrate are a bar to this action and it cannot be maintained.   This is an action for false imprisonment and a conviction by the magistrate in the case before him would be a bar to it.   The proceedings were essentially a conviction; such proceedings have frequently been had in this state from an early date.   They are very much like proceedings on a plea of "nolo contendere," which are frequent but which are not expressly authorized by statute, and which nevertheless form the basis of a valid judgment. *Stratton* v. *Stratton*, 77 Maine, 373.   Plaintiff's action in the Brunswick Municipal court was tantamount to a plea of guilty and he is now estopped to deny it.   It was a valid and binding agreement between the parties, and as such within the principle of *Caffrey* v. *Drugan*, 144 Mass. 294; *Joyce* v. *Parkhurst*, 150 Mass. 243.

SITTING:   PETERS, C. J., EMERY, HASKELL, STROUT, SAVAGE, JJ.

SAVAGE, J.   Trespass for false imprisonment.   The verdict was for the plaintiff for $550.   The case comes up on exceptions by the defendant, and on motion to set aside the verdict on the grounds that it was against law, and against the weight of evidence, and that the damages are excessive.   Substantially the same legal propositions are presented under the motion as under the exceptions.   It will be more convenient to consider the motion first, for the conclusion which we think must be reached under the motion will necessarily dispose of the exceptions.

There is little dispute as to the essential facts.   The questions at issue are chiefly legal ones.   In January, 1896, the plaintiff

purchased from the defendant, and there was issued to him, a mileage book or ticket with coupons, one to be detached for each mile the purchaser should travel. By the purchase of this book, the plaintiff became entitled to travel one thousand miles on the defendant's railroad. Upon the ticket was a contract, which was signed by the plaintiff at the time of purchase. This contract discloses that one of the conditions under which the ticket was sold was the following:

" That it is good only for the person in whose name it is issued, and if presented by any other person, the right to any remaining rides to which the purchaser might have been entitled shall be forfeited, and the conductor shall be authorized to take up this ticket and return the same to the General Ticket Office as forfeited, and conductors are authorized to obtain the signature of the holder of the ticket for identification."

In June, 1896, the plaintiff was a passenger on the defendant's train from Rockland to Brunswick, and in payment of his fare tendered to the conductor the mileage ticket above referred to. The conductor was not personally acquainted with the plaintiff, and for identification, he asked the plaintiff if the name upon the ticket, "Jona. P. Palmer," was his name. The plaintiff refused to say whether it was or not, though he told the conductor that the ticket was his own. The conductor then declined to accept the ticket, and asked the plaintiff to pay a cash fare, which the plaintiff refused to do. As the plaintiff was leaving the train at Brunswick, without further payment or tender of his fare, the conductor caused him to be arrested by a constable, without a warrant, for fraudulently evading the payment of his fare; and this is the arrest complained of. The plaintiff was immediately taken before the Municipal Court of Brunswick, where the conductor, made a complaint, under oath, against him, under R. S., ch. 51, § 78, which provides that whoever "fraudulently evades the payment" of fare over a railroad "by giving a false answer, or by traveling beyond the place to which he has paid, or by leaving a train without paying, forfeits not less than five, nor more than twenty dollars, to be recovered on complaint." The plaintiff pleaded "not guilty."

The plaintiff then paid his fare and the costs of prosecution to the judge of the court. An acknowledgment of "complete satisfaction" was filed by the conductor, and the plaintiff was thereupon discharged without further prosecution. No question is raised but that the conductor was acting within the scope of his authority as a servant of the defendant corporation.

The defendant endeavors to justify the arrest. It claims that the conductor had a lawful right to ask the plaintiff, as a means of identification, if the name on the ticket was his name, and that it was the plaintiff's duty to answer truly; and further, that if the conductor had reasonable cause, from the plaintiff's conduct, to believe that he was fraudulently evading the payment of his fare, and did so believe, the conductor was justified in causing the plaintiff's arrest by an officer, as he was in the act of leaving the train, although the officer had no warrant.

The discussion will be simplified somewhat, if we state, at the outset, two propositions about which we think there can be no real controversy. First, the offense for which the plaintiff was arrested was simply a misdemeanor; secondly, the plaintiff was not guilty in fact. It cannot be said, in any view of the case, that the plaintiff *fraudulently* evaded the payment of his fare. He owned the mileage ticket. He had a right to travel upon it. He tendered it to the conductor. There was no *fraudulent* evasion of payment. There was on his part, only a willful, unreasonable obstinacy, which arose, perhaps, from a mistaken sense of pride.

The precise question to be decided, therefore, is whether a private individual who has procured the arrest of an innocent person for a misdemeanor, by an officer without a warrant, can justify by showing that he acted in good faith, without malice, and upon a belief of guilt founded upon reasonable grounds. We think the question must be answered in the negative.

This is a suit, not for a malicious prosecution, but for a false imprisonment. It is not for a misuse or an abuse of legal process, but for an arrest without legal process. The action must be sustained, unless the defendant can show a legal justification for causing the arrest to be made.

The principles which, by the common law, regulate the right to arrest, or cause an arrest, without warrant, have been long settled both in this country and England, and by these principles the rights of these parties must be determined. Unless modified by statute, they are recognized by the courts, almost without exception. They are designed to promote the safety of the public, and the due administration of public justice on the one hand, and on the other, to afford the citizen security against unwarrantable restraints upon his personal liberty. We shall state these principles somewhat more fully, perhaps, than the particular question under consideration requires; but a full statement is valuable by way of illustration, and for the purpose of showing the clear distinction between the powers of an officer and those of a private individual.

By the common law, an officer may arrest for felony, without warrant, upon reasonable grounds of suspicion. 2 Addison on Torts, § 802; *Samuel* v. *Payne*, 1 Doug. 360; *Davis* v. *Russell*, 5 Bing. 354; 1 Hale P. C. 567; *Burke* v. *Bell*, 36 Maine, 317; *Rohan* v. *Sawin*, 5 Cush. 281; *Holley* v. *Mix*, 3 Wend. 350, (20 Am. Dec. 702); *Com.* v. *Carey*, 12 Cush. 246; *Wills* v. *Jordan*, (R. I.) 41 At. Rep. 233; *Doering* v. *State*, 49 Ind. 56, (19 Am. Rep. 669); *Eanes* v. *State*, 6 Humphreys, 53, (44 Am. Dec. 289); *Kurtz* v. *Moffitt*, 115 U. S. 487; *Holden* v. *Hall*, 4 Hurl. & N. 423. And for making such an arrest, the officer is justified, although it turns out that no felony has, in fact, been committed. *Beckwith* v. *Philby*, 6 Barn. & Cres. 635; *Simmons* v. *Vandyke*, 138 Ind. 380, and the cases cited above. But an officer may not arrest on information or suspicion, without a warrant, for a misdemeanor, unless it was committed in his presence. 2 Addison on Torts, § 804; 4 Black. Com. 292; 1 Hale P. C. 567; *People* v. *McLean*, 68 Mich. 477; *Kurtz* v. *Moffitt*, supra; *Ross* v. *Leggett*, 61 Mich. 445; *Com.* v. *Ruggles*, 6 Allen, 588; *Com.* v. *McLaughlin*, 12 Cush. 615; *State* v. *Lewis*, 50 Ohio St. 179; *Paw* v. *Becknel*, 3 Ind. 475; *Webb* v. *State*, 51 N. J. L. 189; *Krulevitz* v. *Eastern R. R.* 143 Mass. 228. In the last named case, the plaintiff had been arrested, at the request of a conductor, by an officer, without

a warrant, for a refusal to pay fare. We have cited these cases in extenso, because nearly all of these contain valuable discussions of this subject. In many of these cases, it seems to have been held that the authority of an officer to arrest for misdemeanor, without warrant, is limited to breaches of the peace or affrays, committed in his presence; (See also *Com.* v. *Wright,* 158 Mass. 149;) though the offense has actually been committed, but elsewhere, *Scott* v. *Eldridge,* 154 Mass. 25. But in still other cases, the authority is extended to all crimes committed in the presence of the officer. *Baltimore & Ohio R. Co.* v. *Cain,* (Md.), 28 L. R. A. 688, and cases cited there.

But the authority of a private individual is much more limited and confined. He may arrest for felony, but he does it at his peril. If called upon to justify, it has been held by some courts that he must show that the felony had actually been committed, and that he had reasonable grounds for believing the person arrested to be guilty. *Wakely* v. *Hart,* 6 Binn. 316; *Davis* v. *Russell,* supra; *Allen* v. *Wright,* 8 C. & P. 522; *Reuck* v. *McGregor,* 3 Vroom, 70; *Holley* v. *Mix,* 3 Wend. 350; *Keenan* v. *State,* 8 Wis. 132; *Beckwith* v. *Philby,* supra; *Russell* v. *Shuster,* 8 Watts & Serg. 308; *Burns* v. *Erben,* 40 N. Y. 463; 2 Addison on Torts, § 803; Cooley on Torts, 2nd Ed. 202. But it has been held by other courts, and perhaps with better reason, that he must show that the person arrested was actually guilty of the felony. *Rohan* v. *Sawin,* 5 Cush. 281; *Com.* v. *Carey,* 12 Cush. 246; *Morley* v. *Chase,* 143 Mass. 396. So he may arrest for an affray or a breach of the peace committed in his presence, and while it is continuing. 1 Russell on Crimes, 272; 1 Archbold Crim. Pr. & Pl. 82; *Timothy* v. *Simpson,* 1 Crompton M. & R. 757; *Knot* v. *Gay,* 1 Root, (Conn.) 66; *Mayo* v. *Wilson,* 1 N. H. 53; *Phillips* v. *Trull,* 11 Johns. 486; *Kurtz* v. *Moffitt,* supra; *Ross* v. *Leggett,* supra. But a private individual may not arrest for misdemeanor, on suspicion, no matter how well grounded. And, as in case of felony, he is bound to show that the felony has been committed, so in case of affray or breach of the peace committed in his presence, he must show that the party arrested by him was guilty. Nor can

a private individual justify, if he procure the arrest of an innocent person for a misdemeanor, by an officer, without warrant. In such case he is answerable. He can no more lawfully cause such an arrest than he can make it himself. *Hobbs* v. *Branscomb*, 3 Camp. 420; *Hopkins* v. *Crowe*, 7 C. & P. 373; *Derecourt* v. *Corbishley*, 5 El. & Bl. 188; *Price* v. *Seeley*, 10 Clark & Finnelly, 28; *Collett* v. *Foster*, 2 Hurl. & N. 356; *Veneman* v. *Jones*, 118 Ind. 41; *Holley* v. *Mix*, 3 Wend. 350; *Samuel* v. *Payne*, 1 Doug. 360. In *Baltimore & Ohio R. Co.* v. *Cain*, supra, a case analagous in some respects to the one at bar, the plaintiff, by the procurement of the conductor, was arrested as he left the train, by an officer, without warrant. The charge was disorderly conduct on the train. The railroad company was permitted to justify by showing that the charge was true in fact, and that the disorderly conduct amounted to a breach of the peace, for which the conductor as a private individual would have been authorized to arrest, had he been physically able to do so. The court said that "the act of the conductor in telegraphing for a policeman and in a short space of time thereafter turning the plaintiff over to the officer was in no respect different from a formal arrest by the conductor in the midst of the riot and disorder." In the case at bar, however, the charge was not true, and herein lies one distinction at least, and a vital one. Furthermore, the alleged offense here was not a breach of the peace.

Revised Statutes, ch. 133, § 4, provides that every officer shall arrest and detain persons found violating any law of the state until a legal warrant can be obtained. But this statute does not aid the defendant. The plaintiff was not *found violating* any law of the state. The constable had no lawful authority to arrest him for a misdemeanor of which he was not guilty, on information merely, without a warrant.

We conclude, therefore, that the arrest of the plaintiff was unlawful. And, as already intimated, this conclusion disposes of the first two of the defendant's exceptions. For, assuming that the conductor had a right as a matter of law to make the inquiry he did as a means of identification, and assuming that by the

plaintiff's conduct, the conductor had reason to believe and did believe that the plaintiff was fraudulently evading the payment of his fare, still, as we have seen, all this would have afforded no justification, in law.

But the defendant further contends that the proceedings had before the Municipal Court of Brunswick should operate as a bar to this action. The plaintiff paid his fare which he owed, and the costs of prosecution. The conductor acknowledged "complete satisfaction to Jonathan F. Palmer for evading his railroad fare as per my complaint," and thereupon the plaintiff was discharged. The defendant claims that this settlement should be regarded as an admission by the plaintiff, of his guilt. If it were so, we do not see how this could aid the defendant, in view of the uncontroverted facts in this case, or under the law. But it seems to us rather that the settlement was equivalent to an entry of "nolle prosequi upon payment of costs." If this settlement could be regarded as authorized by R. S., ch. 133, § 18, which may well be doubted, it would operate only as a bar to a civil remedy by the railroad company for the injury for which the plaintiff was prosecuted criminally. Sec. 19. The plaintiff "settled" with the state, but the defendant did not settle with the plaintiff. The defendant relies upon *Caffrey* v. *Drugan*, 144 Mass. 294, and *Joyce* v. *Parkhurst*, 150 Mass. 243. In those cases, it was held that parties who had been arrested without warrant, for intoxication, and had been released without formal complaints having been made against them, had by their requests and agreements waived the right to maintain actions for false imprisonment against the officers. But in this case, there is no evidence of any agreement, on the part of the plaintiff, to waive or release his claim against the defendant.

There was no judgment in the criminal case against this plaintiff. If there had been, it would not have estopped him from maintaining this civil action. Bigelow on Estoppel, 100. It is the opinion of the court, therefore, that the plaintiff's remedy is not barred, and has not been waived. This conclusion disposes of the defendant's third and last exception.

The verdict for the plaintiff was not against law, nor against the weight of evidence. Are the damages excessive? The principles upon which damages are to be assessed in this class of cases were elaborately discussed by this court in *Prentiss* v. *Shaw*, 56 Maine, 427. We need state here only the conclusions. Where the justification for an arrest fails, as in this case, the plaintiff is entitled to recover, at least, compensatory damages, damages for the necessary consequences of the act complained of, although the defendant may have acted in good faith, without malice, and upon reasonable grounds to believe that the plaintiff was guilty of the offense for which he was arrested. If the plaintiff claims punitive damages, or damages for his injured feelings, the spirit and conduct of the defendant may be inquired into, to enhance or aggravate, and as well, the plaintiff's own conduct, and the provocation by him, if any, to mitigate, the damages. *Prentiss* v. *Shaw*, supra; *Phillips* v. *Trull*, 11 Johns. 486; *Reuck* v. *McGregor*, 32 N. J. L. 70; *Beckwith* v. *Bean*, 98 U. S. 266; *Chinn* v. *Morris*, 2 C. & P. 361; 2 Greenleaf on Evidence, § 267.

Tested by these principles, we think the verdict in this case is unmistakably too large. In his charge, the presiding justice permitted the jury to assess "a fair and just compensation for the injured pride, the wounded sensibility, the humiliation and mortification of a public arrest." These are, indeed, proper elements of damage, but in view of all the circumstances of this case, the jury made an undue allowance for them. The damages to the plaintiff in his person, and for loss of time and expenses, were little more than nominal. Nearly the whole of the verdict must have been given as punitive damages, or as damages for the injury to the plaintiff's feelings. But whichever it was, it is too large. The fault in the first instance was the fault of the plaintiff. He was traveling on a mileage ticket which could be lawfully used by no other person than the one to whom it was issued. It was the right, as it was the duty, of the conductor, if in doubt, to make himself reasonably certain of the identity of the person presenting it. As one means of identification, the contract upon the ticket itself provided that the conductor might require the signature of

the holder of the ticket.    But this provision did not exclude other simpler and easier, and equally reasonable methods of identification.    The method adopted by the conductor was a reasonable and lawful one.    He simply asked the plaintiff if the name on the ticket was his name.    This was asked on three several occasions; and three times the plaintiff refused to give the information desired.    He says he told the conductor he was under no obligation to give his name.    The uncontradicted testimony of bystanders is to the effect that he also told the conductor that it was "none of his business."    A frank and truthful answer, such as it was his duty to make, would have prevented all trouble.    No question is made but that the conduct of the conductor was gentlemanly.    The plaintiff was willful, obstinate, evasive.    He chose to regard the inquiry of the conductor as an affront to his honesty or dignity.    His wrong was, however, only fancied.    We think the plaintiff's conduct gave the conductor reason to believe,—and he says he did believe,—that the plaintiff was attempting to ride upon a ticket not his own, and which he had no right to use.    This, of course, is not a justification, but it deserves full consideration, in determining whether punitive damages are allowable, or in estimating the injury to the plaintiff's wounded sensibilities.

Under all the circumstances, we think ten dollars will be ample compensation.    The entry will be,

*Exceptions overruled.*

*If the plaintiff files a remittitur of all the verdict in excess of $10 within thirty days after the rescript is received, motion for new trial overruled; otherwise, motion sustained.*