## HARNESS v. STEELE, BY NEXT FRIEND.

[No. 19,848.　Filed October 10, 1902.]

FALSE IMPRISONMENT.—*Complaint.*—A complaint in an action for false imprisonment setting forth that "defendant unlawfully imprisoned the plaintiff and deprived him of his liberty for the space of one hour," etc., is not demurrable on the ground that it pleads a conclusion. *pp. 287, 288.*

SAME.—*Complaint.*—A complaint for false imprisonment is sufficient without alleging that the act complained of was illegal or wrongful, or that the arrest or imprisonment was without competent authority, or malicious, or without probable cause. *p. 288.*

PLEADING.—*Argumentative Denial.*—*Harmless Error.*—Sustaining a demurrer to an argumentative denial is harmless error where the general denial was pleaded in another paragraph. *pp. 288, 289.*

INSTRUCTION.—*When Incomplete.*—Where an instruction is correct as far as it goes, but incomplete, it may be completed by another which supplies the defects. *p. 293.*

FALSE IMPRISONMENT.—*Arrest Without Warrant.*—*Unlawful Detention.*—*Liability of Officer.*—Where a person arrested without a warrant is held by an officer for a longer period of time than is required, under the circumstances, without such warrant, he will have a cause of action for false imprisonment against the officer and all others by whom he has been unlawfully detained. *p. 295.*

SAME.—*Unlawful Detention of Accused by Officer.*—An officer arresting without a warrant cannot justify his action in detaining a prisoner for an unreasonable time before obtaining a warrant, upon the ground that such delay was necessary in order to investigate the case and procure evidence against the accused. *p. 296.*

TRIAL.—*Instructions.*—*Measure of Damages.*—*Two Defendants.*—In an action against two defendants the failure of the court to instruct as to the measure of damages except in the event they found against

one certain defendant, is not reversible error, where the court further instructed the jury that they might find against both defendants, or in favor of either and against the other. *pp. 296, 297*.

FALSE IMPRISONMENT.—*Damages.*—Wounded pride, humiliation, and mortification resulting from a public arrest are proper elements to be taken into consideration in assessing damages in an action for false imprisonment. *p. 299*.

SAME.—*Exemplary Damages.—Malice.*—Where in an action for false imprisonment the evidence discloses that the plaintiff was a boy fourteen years old, and was accused by defendant in the presence of others of being a thief, and upon denial plaintiff was called a liar, the jury may assess exemplary damages, although no malice on the part of the defendant is shown. *pp. 299, 300*.

From Howard Superior Court; *Hiram Brownlee,* Judge.

Action by Arthur Steele against Lewis W. Harness and another for false imprisonment. From a judgment for plaintiff, defendant Harness appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*B. F. Harness, W. R. Voorhis, Milton Bell* and *W. C. Purdum,* for appellant.

*J. C. Blacklidge, C. C. Shirley* and *Conrad Wolf,* for appellee.

JORDAN, J.—Appellee, a minor, by his next friend, sued appellant, the sheriff of Howard county, together with one Strubbs, to recover damages for false imprisonment. A trial before a jury resulted in a verdict against appellant for $400, and a finding in favor of the defendant Strubbs. Over appellant's motion for a new trial, wherein he assigns various reasons, the court rendered judgment on the verdict, from which appellant appealed to the Appellate Court.

The first error argued by counsel for appellant is the overruling of the demurrer to the first paragraph of the amended complaint. This complaint consists of two paragraphs, the first, omitting the caption, is as follows: "Plaintiff, for his amended complaint, complains of the defendants, and says that on the 15th day of May, 1900, the defendants unlawfully imprisoned the plaintiff and deprived him of his liberty for the space of one hour, to his

Harness *v.* Steele.

damage in the sum of $2,000, for which he demands judgment."

It is contended that this paragraph contains no facts to show that appellee was falsely imprisoned and deprived of his liberty, but consists merely of conclusions. While the paragraph is somewhat terse it is an exact copy of the form given in 3 Works Prac. (3d ed.), 152. It may also be said that it substantially follows the averments in a form given in 1 Estee's Pl. & Pr. (4th ed.), 839, with the exception that the latter form does not contain the word "unlawful," and states that the imprisonment was "without probable cause," and also gives the place at which the plaintiff was imprisoned. The charge that "the defendants * * * imprisoned the plaintiff and deprived him of his liberty for the space of one hour" is certainly not a mere conclusion of the pleader, but is a composite statement of the ultimate fact,—the imprisonment of the plaintiff. The word "unlawful" is not essential and may be omitted from the pleading, for the rule is settled in this State that a complaint for false imprisonment is sufficient without alleging that the act complained of was illegal or wrongful, or that the arrest or imprisonment was without competent authority, or malicious, or without probable cause. *Colter* v. *Lower,* 35 Ind. 285, 9 Am. Rep. 735; *Gallimore* v. *Ammerman,* 39 Ind. 323; *Boaz* v. *Tate,* 43 Ind. 60. The paragraph in controversy is at least sufficient on demurrer. It might possibly have been open to the objection, upon a motion to make it more specific, that it did not state the venue where the alleged wrong was perpetrated by the defendants; but in respect to this question we do not decide.

The appellant answered in three paragraphs, the first being a general denial. A demurrer was sustained to the second, and of this ruling appellant complains. The paragraph was not one in confession and avoidance. It professed, in part at least, to recite the circumstances surrounding the alleged arrest and imprisonment, but expressly

averred that the defendant at no time or place arrested the plaintiff, and at no time deprived him of his liberty. If the paragraph, under its recitals and averments, can, on any view, be sustained as an answer, it must be upon the ground that it serves as a special denial. All of the facts, however, therein averred, so far as competent to constitute in any manner a defense to the action, were admissible under the general denial, which remained as a part of the answer; consequently it was not necessary to plead them affirmatively, and the ruling in sustaining the demurrer to the paragraph, under the circumstances, was harmless. *Jeffersonville Water, etc., Co.* v. *Riter,* 146 Ind. 521.

There is a sharp conflict in the evidence in regard to some material points; nevertheless there is evidence to establish the following summary of facts: On May 14, 1900, E. H. Strubbs, appellant's codefendant below, was carrying on a harness shop in the city of Kokomo, Howard county, Indiana. On that day a watch was stolen from his shop, and thereupon he made complaint to appellant, who was the sheriff of said county, and informed him that appellee frequently visited his harness shop, and stated to appellant that he thought appellee had taken the watch as he had been at his place of business on the morning of the 14th, and that appellee knew that he (Strubbs) had the watch, because he had often looked at it when at the harness shop. Appellee was a boy about fourteen years of age, an orphan, residing in the family of one McBeth, in the city of Kokomo. He was a musician, and his standing in the community was good, and he was just beginning to rely for his support on teaching music. Appellant, on receiving the information mentioned, and after talking the matter over with Strubbs, proceeded, on the forenoon of May 15th, to hunt for appellee. After inquiring at several places for him, he finally found him at the home of one Stewart, in said city, and called him out of the house, and then and

there informed him that he was the sheriff of the county, and had come to arrest him. Appellee inquired for what he was to be arrested, and was informed by appellant that he (appellee) knew what he had taken. Appellee denied that he had taken anything, and thereupon appellant informed him that a watch had been taken from Strubbs' harness shop, and that he (appellee) knew he had taken it. Appellee replied that he knew nothing about the watch being taken; that he had no need for the watch as he had one of his own, which he took out and exhibited to appellant. Thereupon the latter took the watch away from him and put it in his pocket, and stated to appellee· to get his hat and come with him. Upon being ordered to get his hat and go with appellant, appellee became excited and frightened, but did as he was bidden, and went along with appellant; the latter informing him that he wanted him to go with him to Strubbs' shop. They went together north along Main street, in the city of Kokomo, until they came opposite the county jail, and then appellant took appellee across the street to the jail, building. Appellant then again said to him: "You don't know nothing about the watch?" and he replied that he did not. Thereupon appellant ·said· to him: "If I have to lock you up you will be in here for six weeks. I don't like to do a young man like this. If you don't own up I will have to turn the keys. If I once turn the keys on you, you will be in here for six weeks." Appellant denied this conversation, but admitted that he took appellee across the street to the jail, but gave as an excuse for so doing that he wanted to ascertain if his dinner was ready, it being then about eleven o'clock. After leaving the jail building, appellee was taken by appellant to Strubbs' harness shop. In going to the shop they went along Main street past the offices of two justices of the peace, and also passed along near the vicinity of the mayor's office, but no offer or attempt was made to take him before either of the magistrates or the mayor. On the way to Strubbs' shop

they went along and through the principal parts of the city, and passed and repassed 'a great many persons, and finally arrived at the harness shop.

Appellee testified that when they reached the shop both Strubbs and appellant accused him of having taken the watch; Strubbs saying to him: "You know you took the watch and you ought to tell where it is. I hate to have a boy up this way;" and further accused him of having taken a match-safe,—all of which he denied. Appellee testified that when at the shop Strubbs and appellant told him that a prominent man passed the window of the shop at the time the watch was taken, and saw appellee take it. Appellant and Strubbs, at the latter's shop, had a conversation in a whisper with each other, after which appellant directed appellee to come along with him. They went together down along Washington, Main, and Walnut streets until they again reached the county jail, appellant continuing to say to appellee that if he did not tell where the watch was he would have to put him in jail, and, if he once put him in jail, he would be there for six weeks; and further said to him, "I don't like to turn the key on a boy." Appellee continued to deny that he had taken the watch, or that he knew where it was, and thereupon appellant told him he was "lying." After they had reached the jail the second time, appellant took appellee into the jail office, and then directed a young man who was present there to get him the key to the door opening into the cell rooms of the jail. He then unlocked and opened the iron door leading to the cells, and then said to appellee: "Now what have you got to say? Back there is your cell." Upon hearing appellant make this statement, appellee became frightened, and began to cry, but continued to assert his innocence. Appellant was informed at the jail that some friend of appellee had been there to see him. After he received this information, he told appellee he might go back to Stewart's house,—that being the place where he was when appellant found him,—

saying to him: "You stay there until this evening, and I will come after you. Don't you go away at all." After appellant let appellee go, he continued crying until he reached the home of Mr. Stewart. He informed Mr. Stewart of his arrest, and the latter went to the jail, and saw appellant in regard to the trouble. Stewart testified on the trial that appellant told him that appellee had been accused of stealing a watch, and that he. had arrested him and taken him to the jail, but did not put him in the prison. He informed this witness that he had no warrant for the arrest of appellee, but, as sheriff, he had the right to arrest a person on information without any warrant being issued. He admitted to this witness that he had taken appellee to the jail, and had opened the cell door, and told him if he did not confess he would put him in the jail. In the same conversation he told the witness that he did not believe that appellee was guilty, but, as an excuse for taking him to the jail and threatening to imprison him therein, he stated that he did so because it was the practice of sheriffs and other officers to do so in order to extort a confession of the truth from an accused person. After going to Stewart's, as directed by appellant, appellee remained there until the next morning; but appellant did not come for him, and he was not again arrested, and nothing further was done in the matter. The fact that appellant had no warrant for the arrest of appellee, and made no attempt to take him before a justice of the peace, or some other judicial officer, is undisputed.

Under the alleged error of overruling the motion for a new trial, appellant, by his counsel, insists that instruction number two is faulty, basing his objection apparently on the ground that it is not applicable to the evidence. In their contention, however, counsel seemingly disregard the evidence given on the part of appellee. When all of the evidence given in the case is considered, as it must be, it is

Harness *v.* Steele.

manifest that the contention in regard to the charge in question is not sustained.

Complaint is also made in respect to instruction number four. By this charge the court advised the jury that the general rule of the law is that no person shall be deprived of his liberty except he first be charged by affidavit or indictment with the commission of an offense, such charge being followed by a warrant duly issued and placed in the hands of an officer authorized to serve such process. The instruction, however, further states that to this general rule there are certain exceptions made necessary by the needs of society; but the exceptions are not given in this particular charge. The objections urged are that the court erred in not informing the jury in the same instruction in regard to the exceptions in question. The court, however, by instruction number six, fully advised them in respect to the exceptions to the general rule asserted in instruction number four. Possibly it might have been more orderly to have stated in the charge the exceptions to the rule so far as they were applicable to the case at bar; but the practice in this State is well settled that where an instruction is correct so far as it goes, but incomplete, it may be completed by another which supplies the defects. On any view of the question, as the exceptions were given in instruction six, appellant, under the circumstances, has no basis for his complaint.

By instruction number seven the court said: "It is the duty of a sheriff arresting a person without a warrant for an offense committed within his view, or when he arrests a person without a warrant upon information, when he has reasonable or probable cause to believe that such person has committed a felony, in either case without delay, and as soon as he can reasonably do so, to take the person whom he has placed under arrest before some magistrate, to be charged with such offense by affidavit. Such an arrest can only be made and the person held for such purpose. If the

officer shall fail to take the person so arrested before a magistrate as required by law, then he is liable to such person in an action for damages." By instruction eight, the jury was further advised that a sheriff of a county is a peace officer, and, as such, he may arrest without a warrant upon information and reasonable or probable cause for belief, but such sheriff is not an examining officer charged with the duty of inquiring as to the guilt or innocence of the party charged. The instruction in substance further stated that the duty of examining into the alleged offense rested on the magistrate before whom the accused person was taken; the court again asserting in this charge, as it had previously done, that it was the duty of the officer making the arrest to take the accused person before a magistrate for presentment and examination in regard to the charge made; that, although the arrest was rightfully made in the first instance, nevertheless if the officer failed to take such person before a magistrate, as required by law, he would be liable in an action for damages.

Appellant's insistence is that instructions seven and eight did not state the law correctly, for the reason, as contended, that a peace officer, on making an arrest without a warrant, is not required, under the law, to take his prisoner before a justice of the peace, or any other committing officer, for the purpose of having the party so arrested charged by affidavit. It is contended that the officer on learning that the accused is probably not guilty of the offense may discharge him. The insistence is that the charge in question is not a correct exposition of the law, because this latter statement is omitted. It is true that an officer who has made an arrest without a warrant may and should, on becoming satisfied thereafter that the accused is not guilty of the offense, release him; but, if either the arrest was unlawful, or the prisoner has been illegally detained or deprived of his liberty by the officer before such release or discharge takes place, the mere fact that the officer released

Harness v. Steele.

the person arrested under such circumstances will not relieve him of an action at the instance of the injured party. Upon any view of the case, the instructions were a correct statement of general principles of law applicable to the evidence, at least so far as they related to an offense of the degree of felony; and, if appellant considered that he was entitled to have the jury advised, as he contends, he ought to have requested a special instruction for that purpose. By the rules of the common law a peace officer where he had reasonable or probable cause to believe that a felony had been committed, might arrest the accused person without a warrant; and for making such an arrest he was justified, although subsequently it appeared that the party was not guilty of committing the offense. *Doering* v. *State,* 49 Ind. 56, 19 Am. Rep. 669, and authorities cited; *Simmons* v. *Vandyke,* 138 Ind. 380, 26 L. R. A. 33, 46 Am. St. 411; *Palmer* v. *Maine Cent. R. Co.,* 92 Me. 399, 42 Atl. 800, 44 L. R. A. 673, 69 Am. St. 513, and cases cited.

But the power of detaining the person so arrested, or restraining him of his liberty, in such a case is not a matter within the discretion of the officer making the arrest. He can not legally hold the person arrested in custody for a longer period of time than is reasonably necessary, under all of the circumstances of the case, to obtain a proper warrant or order for his further detention from some tribunal or officer authorized under the law to issue such a warrant or order. If the person arrested is detained or held by the officer for a longer period of time than is required under the circumstances, without such warrant or authority, he will have a cause of action for false imprisonment against the officer and all others by whom he has been unlawfully detained or held. *Simmons* v. *Vandyke, supra; Low* v. *Evans,* 16 Ind. 486; 12 Am. & Eng. Ency. Law (2d ed.), 741, 746, 747; *Leger* v. *Warren,* 62 Ohio St. 500, 57 N. E. 506, 51 L. R. A. 193, 78 Am. St. 738; *Brock* v. *Slim-*

Harness *v.* Steele.

*son,* 108 Mass. 520, 11 Am. Rep. 390; *Green* v. *Kennedy,* 48 N. Y. 653; *Tubbs* v. *Tukey,* 3 Cush. 438, 50 Am. Dec. 744.

An officer arresting without a warrant can not justify his action in holding or detaining the prisoner for an unreasonable time before obtaining a warrant upon the ground that such delay was necessary in order to investigate the case and procure evidence against the accused. A detention for such a purpose, if necessary, is properly within the jurisdiction of the justice of the peace or other judicial officer before whom he may be charged with committing the offense. Under §1771 Burns 1901, a sheriff is authorized to arrest without a warrant any person whom he may find violating any of the penal laws of this State. But the statute is careful to provide that the detention of the person so arrested is to continue only until a legal warrant can be obtained. This section is applicable to offenses, either felonies or misdemeanors, committed in the presence or under the observation of the persons authorized thereunder to make the arrest; and, so far as it applies to sheriffs and others therein mentioned, who were peace officers at common law, it is but a declaration or recognition of the rule asserted by the latter law, as thereunder it was the duty of peace officers to arrest without a warrant any person who committed an offense, either felony or misdemeanor, in their presence or within their view.

While instructions seven and eight are not as aptly and as clearly drafted as they might have been, nevertheless, when considered in connection with others given, they are in harmony with the principles of the law to which we have referred, and are applicable to the evidence in this case. The court committed no error in giving them to the jury.

It is next insisted that instructions fourteen and fifteen are misleading and prejudicial to appellant. It is claimed that an infirmity exists in the former because it advises the jury as to the measure of damages in the event they find

Harness *v.* Steele.

against appellant. As there were two defendants in the action it is urged that the jury must have understood thereby that they would not be justified in finding in favor of appellant. The fault imputed to the latter instruction is that it informed the jury how to formulate their verdict in the event they found against appellant, but is silent as to their finding against his codefendant; hence it is asserted that the jurors were, in effect, given to understand that they could not, under the evidence, find in favor of appellant unless they found in favor of both defendants. In the fifteenth instruction the court stated to the jury that in the event they found in favor of both defendants, the form of their verdict would be, "We, the jury, find for the defendants." Instruction eleven stated that, in case the evidence warranted, the jury could find against both the defendants, or in favor of one and against the other. Under the circumstances appellant's objection to these instructions are certainly untenable, and without merit. If he desired the jury to be more fully advised in regard to their findings or forms of verdict, he should have presented a special instruction to be given by the court in respect to that matter.

It is finally contended that the judgment should be reversed because it is not sustained by sufficient evidence, and for the further reason that the damages are excessive. The contention is that the evidence discloses that appellant had no intention of arresting or detaining the appellee, and the argument is seemingly carried to the extent of asserting that the appellee was not restrained of his liberty. In their argument on this question appellant's counsel seem wholly to disregard the evidence given in behalf of the appellee, and virtually request that we consider alone that introduced on the part of their client. Appellant's own admissions, which were introduced against him in evidence at the trial, go to show that he considered that he had appellee under arrest and in his custody, and was detaining

Harness *v.* Steele.

him until he could investigate as to his guilt, or, rather, until he could extort from him a confession.

As we have previously said, the evidence is, in some respects, conflicting, but it is ample to sustain the verdict of the jury on every material point. Appellant, as disclosed by the evidence, went to the home of Mr. Stewart, where appellee was visiting at the time. He called him out of the house onto the porch, and informed him that he was the sheriff of the county, and had come to arrest him. Upon appellee inquiring as to the reason for his arrest, he accused him with the larceny of the watch. This accusation appellee denied. Appellant, it seems, dispossessed appellee of his watch, and then bid him come with him. He obeyed this command and was taken down the public streets of the city of Kokomo until the county jail was reached. He was then taken by appellant from the jail along the public streets of that city until the harness shop of Mr. Strubbs was reached, and was there detained for a time, and threatened with imprisonment if he did not confess that he was guilty of the larceny. After the lapse of some time he was taken back to the jail by appellant, into the interior of the prison, and was shown a cell in which, as appellant informed him, he would be locked, unless he admitted that he had stolen the watch; and when he continued to assert his innocence appellant called him a liar. After a time he was commanded by appellant to go back to Mr. Stewart's place, at which he was arrested, and was commanded to remain there until the evening of that day; when appellant stated he would call for him. Ample time and opportunity, under the circumstances, were afforded appellant to have proceeded in the arrest of appellee in an orderly way by taking him before a justice of the peace or the mayor of the city for the purpose of being charged with the alleged crime. This he failed and neglected to do.

There is evidence to show that appellant's purpose in detaining appellee and threatening to lock him up as he did, was to extort a confession from him in respect to the larceny. It can not be successfully controverted, under the evidence, but what appellee is shown to have been placed under arrest by appellant, and subjected to his commands and movements during all the time he had him in charge. He was not permitted to go or move at his own free will or volition, for it is evident that whatever consent he may have given to go with appellant was enforced by the latter. If the jury believed the testimony of appellee and the witnesses who testified in his behalf, they were fully warranted in assessing the damages which they did.

Wounded pride, humiliation, and. mortification resulting from a public arrest are proper elements that may be taken into consideration in assessing damages in cases of this character. The spirit and conduct of appellant at the time he made the arrest were matters that the jury, under the evidence, had the right to, and doubtless did, inquire into, and gave the same consideration. They probably found, as there is evidence to justify such finding, that there were unwarranted insults offered to appellee on the part of appellant; also oppression on his part, and a reckless disregard, under the circumstances, of appellee's rights as a citizen. Appellee, as the evidence discloses, was subjected to repeated "quizzing," and was virtually branded by appellant, in the presence of others, as a thief; and when he, a mere boy, protested his innocence in regard to the charge, appellant called him a liar. Under these circumstances the jury may, and possibly did, inflict "smart money" or exemplary damages, as jurors have the right to do in cases of false imprisonment when the facts justify. *Farman* v. *Lauman,* 73 Ind. 568. Such damages do not necessarily, as claimed by counsel for appellant, depend alone upon malice on the part of the wrongdoer, but they may be rightfully awarded when the wrongful act is wilfuly done in a

wanton or oppressive manner, or done in the reckless disregard of the rights of the complaining party. This court, upon a charge of excessive damages, will not interfere with the verdict of the jury, unless the damages assessed are so large as to induce the belief that they resulted from passion or prejudice, and are not the result of the jurors' deliberate judgment upon the evidence.

The act and conduct of appellant in threatening appellee with imprisonment in jail, and in subjecting him to what is commonly known as the "sweating process," for the purpose of extorting a confession, certainly can not be commended, and under the circumstances we consider that the jury was very moderate in the assessment of damages.

The record presents no available error. Judgment affirmed.