THE ATCHISON, TOPEKA & SANTA FE RAILWAY
COMPANY V. A. B. HINSDELL.

No. 15,066.     (90 Pac. 800.)

SYLLABUS BY THE COURT.

1. CARRIERS—*Transportation Contract—Waiver of Lien.* A written contract for the transportation of goods by a common carrier will not be deemed to waive a lien upon them for the charges therefor unless it contains provisions inconsistent with the assertion of such lien or unless an intention to make such waiver is indicated expressly or by clear implication.

2. ―――― *Waiver of Lien Not Shown.* Such a waiver is not shown by recitals in such a contract that all prior agreements concerning the facilities for such shipment or concerning the transportation of such goods or such shipment are merged in the written contract, and that the written contract contains all the terms, agreements and provisions relating in any manner to the transportation of such goods.

3. CRIMINAL LAW—*Larceny by General Owner of Goods.* The general owner of goods shipped by a common carrier may be guilty of larceny by fraudulently taking them from its pos-

session with the intent of defeating its lien upon them for the transportation charges.

4. ———— *Arrest without a Warrant—Discharge—Legality of Detention—Good Faith.* Where one guilty of a felony is lawfully arrested therefor by an officer without a warrant, and is discharged before his detention has become unlawful through an unreasonable delay to procure a warrant or to present him before a magistrate, such discharge does not operate to make the original arrest unlawful, nor does it afford conclusive proof in an action for false imprisonment that the prosecution was not begun in good faith.

5. DAMAGES—*Action for False Imprisonment—Evidence.* Where one who has committed grand larceny by fraudulently taking goods of which he is the general owner from the possession of a carrier having a lien thereon is arrested therefor, but released without having been brought before a magistrate, in an action for false imprisonment brought by him against the carrier evidence that the carrier's agent in causing his arrest described his offense as running away without paying his bill and said that all the carrier wanted was its money, if accepted as true, does not establish his right to recover.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed June 8, 1907. Reversed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*J. M. Challiss,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: A. B. Hinsdell sued the Atchison, Topeka & Santa Fe Railway Company for false imprisonment. The court instructed the jury that the evidence conclusively established the commission of the tort, and that the only question left for their determination was the amount of damages. They returned a verdict for $500, upon which judgment was rendered, from which the defendant prosecutes error.

The evidence tended to show these facts, among others: Hinsdell delivered to the railway company at Ralston, Okla., for transportation to St. Joseph, Mo., what was called an "emigrant's outfit," including some

household goods, two horses, harness, and a wagon. The property was shipped accordingly, and arrived in Atchison on the afternoon of the next day, which was Saturday. Here the plaintiff removed it from the car without having permission from any agent of the company, and started to drive with it across the bridge over the Missouri river, intending to avoid the payment of the freight charges. Discovering the situation, the station-agent telephoned to police headquarters, and upon his statement so made a policeman arrested Hinsdell without process. He was held in custody until some time Sunday morning, when he was discharged without further proceedings. On Saturday evening after his arrest he offered the company's agent a draft in payment of the freight bill, but this was refused. On his release he went to St. Joseph, where he cashed the draft. He then returned to Atchison, paid the freight bill, and received his property, which had been returned to the company.

We think the trial court erred in holding that the liability of the defendant was conclusively established. There was sufficient evidence to support a finding, not only of the existence of probable cause to believe the plaintiff guilty of grand larceny, but of his actual guilt. In either case the absence of a warrant was unimportant. (*Garnier v. Squires,* 62 Kan. 321, 62 Pac. 1005; 3 Cyc. 878; 19 Cyc. 351.) If the arrest was lawful the motive for it was immaterial. (12 A. & E. Encycl. of L. 726, note 2; 19 Cyc. 319, 320, note 9; *Mullen v. Brown,* 138 Mass. 114; *Bierwith v. Pieronnet,* 65 Mo. App. 431.) The question whether the detention, if originally rightful, became subsequently unlawful depends upon the circumstances—chiefly upon whether it was prolonged for an unreasonable time without a warrant's being obtained or the prisoner's being taken before a judicial officer. (12 A. & E. Encycl. of L. 745, 746.) And it cannot be said as a matter of law that there was an unreasonable delay in this respect in the present instance, in view of the

time the arrest was made. These propositions, we think, are abundantly supported by reason and authority.

It is familiar law that larceny may be committed by the wrongful taking of property by its general owner from the possession of one who has a lien upon it. (18 A. & E. Encycl. of L. 499.) This principle is not disputed, but it is claimed that the railway company in this case had no lien upon the goods because they were accepted under a written contract which made no reference to the matter and included this provision:

"It is distinctly understood and agreed that all prior understandings or agreements concerning the furnishing of cars or facilities for said shipment or concerning the transportation of said stock, goods and articles, or said shipment, are hereby completely merged and contained in this written agreement, and this written agreement contains all the terms, conditions and provisions relating in any manner to the shipment or transportation of said stock, goods or articles."

It is of course competent for the parties to make an agreement waiving the carrier's lien, "but a waiver of the lien is not to be readily presumed, and the party insisting upon the waiver must show clearly that the provisions of the special contract are so inconsistent with the existence of the lien as to indicate clearly a waiver of the latter." (5 A. & E. Encycl. of L. 416.) "No special agreement as to the carriage and delivery, which does not expressly or by clear implication amount to a waiver of the lien, will have that effect." (2 Hutch. Carr., 3d ed., § 875.) We discover nothing in the provision quoted or in any other part of the contract that is inconsistent with the existence of a lien or that shows a purpose to do away with it.

A rule which if followed here would result in affirming the judgment is thus stated in volume 12 of the American and English Encyclopædia of Law, at page 747:

"As it is the duty of an officer arresting to present the person for trial without delay, so if the prisoner is

released without presentment before a magistrate the officer will be held a trespasser *ab initio.*"

This rule originated in Massachusetts, by treating the abandonment of a criminal prosecution between the arrest of the defendant and his presentation before a magistrate as analogous to the failure of an officer who has seized property in a civil proceeding to make due return of his writ and applying the doctrine that acts otherwise unlawful cannot be justified by legal process the requirements of which have not been fully complied with. (*Tubbs v. Tukey & another,* 57 Mass. 438, 50 Am. Dec. 744; *Brock v. Stimson,* 108 Mass. 520, 11 Am. Rep. 390.) It has been followed in *Stewart v. Feeley,* 118 Iowa, 524, 92 N. W. 670, and in *Pastor v. Regan,* 30 N. Y. Supp. 657. In other cases growing out of similar facts, however, the question involved is stated to be whether there was an unreasonable delay in bringing the prisoner before a court, the discharge without such presentation being apparently not regarded as determinative. (See, for example, *Leger et al. v. Warren,* 62 Ohio St. 500, 57 N. E. 506, 51 L. R. A. 193, 78 Am. St. Rep. 738; *Harness v. Steele,* 159 Ind. 286, 64 N. E. 875; *Cochran v. Toher et al.,* 15 Minn. 385.) In *Mulberry, Appellant, v. Fuellhart,* 203 Pa. St. 573, 53 Atl. 504, the rule referred to was invoked, but the court refused to follow it, saying:

"Undoubtedly there are cases where an act in the first instance lawful becomes afterward a trespass *ab initio.* For instance, where a lawful levy is made but goods are sold without the notice required by the statute. Or where goods are distrained upon for rent and sold without having been appraised and advertised in accordance with the act of assembly. But in such cases, as we understand the line of distinction, when the action taken is lawful, it cannot be made illegal *ab initio,* unless by some positive act incompatible with the exercise of the legal right to do the first act. The propriety of the arrest in this case is not questioned. Neither was the detention malicious nor wilful; it resulted rather from the clemency of the officer. If the sheriff instead of relenting had proceeded to prosecute

Railway Co. v. Hinsdell.

the plaintiff . . . there would have been no reasonable ground for complaint. . . . His mistake or his fault, then, lay, not in the arrest, nor in the detention for what under the circumstances was not an unreasonable time. It consisted merely in his failure to prosecute. This was at most an omission or a neglect to do what the plaintiff, after the arrest was once made, had perhaps a right to demand of him. But it has been well said that 'not doing a thing cannot make a party a trespasser *ab initio,* because not doing is no trespass.' . . . The failure, therefore, of the sheriff to proceed with the prosecution was not a direct and positive act, such as is required to convert a legal into an unlawful action, and thus make him a trespasser *ab initio.*" (Page 578.)

Of the same question, considered in the light of the practical effect upon the substantial rights of the person arrested of a discharge without a formal hearing, it was said in *Mayer v. Vaughan,* Q. R. 11 K. B. 340:

"Upon the question of a release without a formal complaint there is more scope for argument. Plaintiff complains that by this course he was deprived of his right to a formal acquittal—a certificate of which would have been a valid answer to any future reflection against him, based on the fact that he had been under arrest upon a charge of stealing a post-letter. It is plain from the text-books upon the duties of constables that it is their duty to take all arrested persons with the least possible delay before a magistrate. But this must be intended to apply to cases in which the charge against the prisoner is persisted in, and clearly should not apply to cases in which the charge for any reason is dropped. Suppose the case of a constable having made a mistake in his instructions and arrested the wrong man: it seems absurd to suppose that the charge may not be dropped and the person released. Such would be the procedure, it appears to me, if the evidence expected to be secured proves to be wanting, as in the case of the supposed pickpocket or counterfeiter, or of the accused letter-carrier. Of course, if the person thus arrested will not accept his release, and demands to be taken before a magistrate, his wish should be respected, but in the absence of any such demand the simple act of a constable in thus releasing a person against whom he finds no evidence of guilt would not

of itself suffice, in my opinion, as the basis of a claim for damages."

We cannot regard the failure to follow up an arrest with further steps for the prosecution of the person arrested as having any retroactive effect. We see no reason why the matter should be absolutely controlled by the analogy to civil process. In practical operation the rule stated might give anomalous results. For instance, a person suspected of crime may be taken into custody by an officer without a warrant, the arrest being entirely justifiable because of the existence of probable cause to believe him guilty. Before he can be taken before a magistrate it may happen that circumstances develop showing his innocence. There can be no doubt that on all accounts he ought to be at once discharged. As was said in *Harness v. Steele,* 159 Ind. 286, 64 N. E. 875, "an officer who has made an arrest without a warrant may and should, on becoming satisfied thereafter that the accused is not guilty of the offense, release him." (Page 294.) A rule that such discharge would render the officer a trespasser from the beginning would have a harsh and unfortunate operation upon both parties to the transaction. We see no occasion for holding that the mere act of discharge, in and of itself, changes the essential character of the restraint previously exercised. An arrest lawfully made without a warrant justifies holding the prisoner long enough to procure a warrant or to present him before a magistrate, and no longer. When without just excuse his detention is prolonged beyond the time reasonably necessary for that purpose it then ceases to be lawful and becomes unlawful, not from the beginning, but from that moment. And if before that change has taken place he is released he has suffered no wrong. His restraint at any instant is either legal or illegal. If it is legal, and those responsible for it, whether through clemency or indifference, see fit to set him at liberty, he is not thereby aggrieved.

Railway Co. v. Hinsdell.

If it is illegal, he has a right of action irrespective of his release. The circumstances of his discharge, however, may be of great importance as a matter of evidence, in so far as they throw light upon whether the detention was at any time legal—whether the arrest was made in good faith.

The claim is made that the evidence bears no other interpretation than that the arrest of the plaintiff was not intended as a step in a criminal prosecution but was only a device to enable the defendant to collect a debt from him. It is true that there was uncontradicted testimony that the railroad agent, in procuring the arrest of Hinsdell, described the offense charged against him as running away without paying his bill, and the same agent as a witness for the defendant said that all the company wanted out of him was the amount of the freight charges. But it was not important, if a crime had been committed, that those causing the arrest of the offender should describe it with technical accuracy. While the station-agent said upon the stand that he would have released Hinsdell upon the payment of the money due the company, he also said that he would have been governed as to any further prosecution by the advice he might receive from an attorney. The situation presented by the fraudulent taking of goods by their general owner from the possession of one having a special interest in them is unusual, and ignorance of the rights of individuals or the public with reference thereto is not to be taken as evidence of bad faith. The entire testimony, so far as it is binding upon the defendant, is consistent with the idea that the plaintiff unlawfully took his property from the car where the company had a right to retain it until the freight charge was paid—an act which the law calls larceny—in this case a felony; that on the discovery of the fraud he was rightfully arrested, at the request of the company's agent; that before he had been detained for an unreasonable time, the stolen goods having been

6—76 KAN.

returned, the prosecution was abandoned and he was discharged. These facts would not of themselves give him a right of recovery.

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.