No. 17,210.

## SIMMONS *v.* VANDYKE ET AL.

**FUGITIVE.**—*Arrest and Detention Upon Telegram.*—*Habeas Corpus.*— *Insufficient Return.*—To a writ of *habeas corpus* directed against a police officer and the county sheriff, the defendants made return that the police officer arrested the petitioner and delivered him into the custody of the sheriff for commitment; that he did so upon a telegram from H., the chief of police of Portland, Oregon, to the effect that the latter held a warrant for the petitioner upon a charge of forgery, and directing the arrest; that after the arrest H. sent to the officer, by telegraph, a copy of a warrant issued to and held by H. for the petitioner's arrest; that H. had sent a further telegram that he had started, with proper papers, for the petitioner; that defendants believed the petitioner guilty of said crime, made the arrest in good faith and believed that H. was en route to procure the petitioner's extradition.

*Held,* that the return is bad.

From the Madison Circuit Court.

*W. S. Diven, B. McMahan, J. W. Lovett* and *H. C. Ryan,* for appellant.

*E. D. Reardon, J. R. Thornburgh, M. P. Turner* and *B. H. Campbell,* for appellees.

HACKNEY, C. J.—The appellant sought to be released from custody and confinement in the county jail, and filed, in the lower court, his petition for the writ of *habeas corpus*; alleging that the appellees William Vandyke, sheriff of Madison county, and George Welker, a policeman of the city of Anderson, had arrested the appellant and held him in custody without warrant or legal charge or authority, but upon a pretended charge of forgery in the State of Oregon, and pursuant to the direction of the chief of police of Portland, Oregon, communicated by telegraph; that he had not committed any crime, nor had he been charged with the commission of

any crime in this State, and that his arrest had not been ordered by any court or officer of this State.

The appellees made separate returns to the writ, but, by agreement, the returns were considered as joint. By said returns, it appeared that Welker was a police officer, and, as such, took the appellant into custody and delivered him into the custody of Vandyke, as sheriff, for commitment; that he did so upon a telegram received from one Hunt, chief of police of Portland, Oregon, to the effect that he held a warrant for appellant upon a charge of forgery, and directing the arrest; that after the arrest, said Hunt sent to Welker, by telegraph, a copy of a warrant issued to and held [by him, said Hunt, for the arrest of appellant; that Hunt had sent a further telegram that he had started, with proper papers, for Simmons; that appellees believed appellant guilty of said crime and made said arrest in good faith, and that they then believed said Hunt en route to Anderson to procure the extradition of the appellant. The court overruled exceptions to the returns, and that ruling presents the assigned errors.

The appellees have not aided us with any brief, argument or citation of authority, and we find no statutory authority for making the arrest and detaining the appellant upon the facts stated in the petition and returns. Fugitives from justice from one county in this State to another county in this State may be apprehended by proceedings as provided in section 1667, R. S. 1894 (section 1598, R. S. 1881), and fugitives from another State into this State may be arrested, detained and returned upon demand of the executive authority of the State from which the criminal is a fugitive, upon warrant and upon identification as required by section 1668, *et seq.*, R. S. 1894 (section 1599 *et seq.*, R. S. 1881).

It is manifest that no authority for the arrest and de-

tention under consideration is found in the provisions cited, nor can it be said that the arrest was made upon view, by the officers, of the commission of a crime.

The act of February 12, 1838, R. S. 1838, p. 319, authorized proceedings before certain judicial officers of this State, upon which arrests of fugitives from other States were permitted and their detention directed. That act passed into the R. S. 1843, p. 1030, but has not been included in any subsequent revision. We do not inquire if said act is now in force, since there is no pretense that the arrest and detention in this case were made pursuant thereto.

At common law, peace officers have the power to arrest upon information of the commission of a felony, and without a warrant, and do not do so at the peril of proving the commission of the felony. *Doering* v. *State*, 49 Ind. 56; 1 Am. and Eng. Encyc. of Law, p. 732, section 2.

*In re Fetter*, 3 Zabriskie (N. J.), 311, 57 Am. Dec. 328, it was held that under article 4, section 2, of the Constitution of the United States, the power to arrest and detain a fugitive, until the authorities of the State whose laws had been offended against could make the demand in said section provided, was implied. It was said: "The denial of the power to arrest and detain an offender until the demand for his surrender be actually made, would, it is manifest, render the provision of the constitution well nigh nugatory. If a person committing murder, robbery, or other high crime in one State, may, by crossing a river, or imaginary line, avoid arrest or detention until an executive requisition and order for his surrender may be obtained, the execution of the criminal law would be impotent indeed. Sound public policy, good faith, a fulfillment of the requirements of the constitution, all require that the arrest and detention of the

offender, be made wherever he may be found, preparatory to a demand and surrender." As supporting this power, are cited *People* v. *Schenck*, 2 Johns. *479; *In re Goodhue*, 1 Wheel. Cr. Cas. 427; *Commonwealth* v. *Deacon*, 10 Serg. & R. 125.

We have no doubt that the exercise of the power of detention does not rest wholly with the officer making the arrest, and that he should, within a reasonable time, take the prisoner before a circuit, criminal or other judicial court and take the judgment of commitment from such court upon complaint in writing, submitting an inquiry as to the presumption of guilt and the good faith of the officer. *In re Heyward*, 1 Sandf. 701; *In re Leland*, 7 Abb. Pr. (N. Y.) 64; *Ex parte Cubreth*, 49 Cal. 435.

In this case the appellant was not committed or detained upon such an inquiry, and, whether our courts possess the jurisdiction by statute or by implication is not before us, though the holding of some of the courts seems to imply that jurisdiction. *State* v. *Buzine*, 4 Harr. (Del.) 572; *In re Washburn*, 4 Johns. Ch. *106; *In re Leland, supra; In re Rutter*, 7 Abb. Pr. 67.

*In re Henry*, 29 How. Pr. 185, was a case in many respects like the present, and it was there said:

"On the return of the writ no affidavits nor any other proof of the alleged larceny have been furnished, but all the information afforded rests in letters unauthenticated except by the signature of the chief of police of Chicago, and the telegraphic dispatches purporting to come from him, the last dispatch indicating that a requisition has been finally obtained.

"Under these circumstances, I am reluctantly compelled to grant his discharge. The officers were undoubtedly authorized to make the arrest. The rule is that a private person even may arrest a party, if a

felony has in fact been committed, and there was reasonable ground of suspicion; but in the case of an officer, he is justified in making an arrest if no felony was in fact committed, if he acted upon information from another on which he had reason to rely.

"This is the well settled rule in the English courts, sanctioned and followed in this State in the case of *Holley* v. *Mix* (3 Wend. 350). In such case the officer acts ministerially, and is entirely justified in making the arrest, and it is a power very important to be exercised to prevent the immediate escape of felons. But he has another duty to perform. In the case where the arrest is made under a warrant, the officer must take the prisoner without any unnecessary delay before the magistrate issuing it, in order that the party may have a speedy examination if he desires it; and in the case of an arrest without warrant, the duty is equally plain, and for the same reason, to take the arrested party before some officer who can take such proof as may be afforded, or if the circumstances will justify it, hold the suspected party for further examination. (*Pratt* v. *Hill,* 16 Barb. 307).

"If this is not done with reasonable diligence, the party arrested can apply for a *habeas corpus*, calling on the officer to show cause why he is detained, and with the return to the writ the rule is that where the arrest is upon suspicion, and without a warrant, proof must be given to show the suspicion to be well founded (2 Inst. 52.) No such proof has been exhibited to me. The original grounds of suspicion indeed remain, and may be deemed presumptively strengthened by the last dispatch, but they contain no element of proof in the legal sense, and would not authorize me to detain him."

The value of personal liberty is too great to permit the detention of a suspected fugitive upon the judgment

of a ministerial or peace officer, and without a hearing judicial in character. The inquiry by the circuit court in this case was not extended to an investigation of the cause for detention beyond that stated in the return, and its judgment remanding the appellant was upon the ex-ceptions to the return, and not upon an independent in-quiry by the court.

We have felt the loss of that aid which should have been given us by the appellees in a brief in this case, but are equally at a loss to observe the theory upon which the appellant was committed.

The judgment is reversed with instructions to the circuit court to sustain the appellant's exceptions to the return to the writ of *habeas corpus.*

