No. 12,705.

GEORGE H. WELLS vs. D. A. JOHNSTON, SHERIFF, ET AL.

52   713
e107  699

52   713
d118  914

SYLLABUS.

The duties assigned to a sheriff are delicate and difficult, and his responsibilities are great; and in the absence of proof having a tendency to show a wanton abuse of authority, it is right that a court should hold an action for damages not maintainable against him, on the ground that he had probable cause to make the plaintiff's arrest—notwithstanding it be shown to have been a clear case of mistaken identity.

Wells vs. Johnston, Sheriff, et al.

ON REHEARING.

1. False imprisonment is in its nature closely allied to malicious prosecution. Two things are essential in order to constitute the offense. First, detention of the person : Second, the unlawfulness of the detention.
It is not necessary that the unlawful act should be committed with malice or ill-will ; consequently, the question of malice is immaterial, except as it may affect the question of damages.
2. The circumstances and conditions under which a citizen of Louisiana can be arrested and imprisoned, on a claim that he has committed a crime in another State and has fled from justice, are defined by Act of Congress and Section 1038 of the Revised Statutes of Louisiana, and a sheriff of Louisiana who proceeds to make arrests and an imprisonment without a warrant as provided for therein is liable in damages for the same ; want of malice . on his part is no justification—it simply mitigates the act.

APPEAL from the Fifth Judicial District, Parish of Ouachita— Potts, J.

---

A. A. Gunby and Lamkin & Millsaps for Plaintiff, Appellant.

---

Hudson, Potts & Bernstein for Defendant, Appellee.

---

On rehearing the opinion of the court was delivered by NICHOLLS, C. J.

---

The opinion of the court was delivered by

WATKINS, J. This suit was brought against the sheriff, and several private individuals as the sureties upon his official bond for the recovery from them in solido of the sum of $5300.00 as damages for his alleged illegal and wrongful arrest and incarceration in the parish jail for a period of eight days.

The case was tried by a jury, who rendered a verdict in favor of the defendants, and from that verdict and the judgment thereon rendered, the plaintiff prosecutes this appeal—a motion having been made for a new trial on the sole ground that the verdict of the jury was contrary to the law and the evidence, and overruled.

The petitioner represents, that he was peaceably and lawfully engaged in getting out staves at a place about seventeen miles from Monroe, in the parish of Ouachita, when a deputy of the defendant sheriff "arrested him without reading any warrant or having any warrant in his possession", and carried him to Monroe at 9 o'clock at night and incarcerated him in jail. That at that time the defendant

"read to petitioner a warrant for the arrest of Ben Franklin; and notwithstanding petitioner protested and declared that he was not Ben Franklin; and notwithstanding the said sheriff and his deputy well knew petitioner and his family, they proceeded forcibly and unlawfully to incarcerate and hold him in jail, illegally, and unlawfully, without warrant of law, and without probable cause, for a period of eight days, when he was released by said sheriff."

Petitioner charges, that in making his arrest, the sheriff had no right or cause whatever therefor; but that in so doing "he acted recklessly and wantonly in an effort to make a reward which was said to have been offered for the capture of one Ben Franklin (who was) charged with having committed murder in the State of Alabama."

That the sheriff did thus arrest and incarcerate him without having "the slightest reason to suppose that petitioner was Ben Franklin; and that he had no requisition or papers whatever to authorize or warrant (this) arrest."

He alleges that he married his wife in the parish of Ouachita in the month of September, 1893, and since that time has resided in that parish, openly and publicly, and has settled homestead and acquired a small amount of property therein; and at the time of his arrest, was engaged in getting out staves—this suit having been filed on the 11th of June, 1897.

Then follow the specific grounds upon which his demand for damages is predicated.

The several defendants unite in one answer and specially deny each and every allegation in the petition contained; and further specially aver, "that the defendant sheriff acted in the performance of the duties of his office, without malice, and upon probable cause."

The testimony of the plaintiff, as a witness, circumstantially corroborates the allegations of his petition.

It appears from the evidence, that during the progress of the trial in the lower court, the plaintiff was twice arrested under three different warrants; once as George H. Wells, under an indictment preferred against him by the grand jury of Ouachita, on the charge of obtaining goods under false pretenses; and again under two different warrants, as Ben Franklin, charging him with the commission of murder in the State of Alabama in the latter part of the year 1891— a date two years prior to that of his alleged marriage in Ouachita parish.

That, contemporaneously with the foregoing, he was likewise arrested under a warrant and a requisition; and that he was only liberated therefrom under a writ of *habcas corpus* subsequent to the trial and decision of this civil suit for damages.

There were many witnesses interrogated and who gave their testimony at great length and in detail, with regard to the circumstances of the plaintiff's arrest and incarceration in jail; and of his subsequent release from custody, by the defendant, sheriff, voluntarily. Also, of his subsequent re-arrest under other warrants, and an Alabama requisition as a murderer and a refugee from justice.

That these arrests were made upon the theory that the plaintiff was Ben Franklin of Alabama; and that the sheriff released him upon the ground of possibly mistaken identity.

The plaintiff is one of those persons who has pursued the humbler walks of life, having always been in impecunious circumstances.

He came to Louisiana a few years prior to his arrest, and lived in comparative obscurity, and was not possessed of many acquaintances.

A rumor was bruited about, that an Alabama refugee from justice was wanted upon a charge of murder, and for whose arrest a reward had been offered by the authorities of that State.

Suspicion pointed the plaintiff out, and straightway one of the defendant sheriff's deputies came upon him by surprise whilst he and his companions were at work in the woods, and promptly arrested him and carried him to jail; and then for the first time was a warrant for the arrest of Ben Franklin read to him by the defendant, sheriff.

The plaintiff vigorously protested that he was not Ben Franklin, and was innocent of the charge; but his protest was utterly unavailing.

During the time the plaintiff remained in jail, an investigation was set on foot both in Louisiana and Alabama for the purpose of establishing his identity as Ben Franklin. There were some persons who held to the theory of his identity, whilst there were others who were in doubt.

Finally, upon mature deliberation, the sheriff made up his mind to release him from custody; and this suit speedily followed with the result already stated.

That he was subsequently arrested, and again incarcerated in jail under warrants formally issued, and from which plaintiff only procured his release upon *habeas corpus* proceedings, is a circumstance

which has its weight and must be considered in determining the issue before us.

The suggestion is offered, that those proceedings were not in good faith and only intended to exercise an influence upon the minds of the court and jury in the decision of this suit.

We do not think this suggestion is borne out by the evidence, and the judgment of this court must not be guided by inferences merely.

Under these circumstances, we are pressed to set aside a verdict of a jury, say the judge *a quo* erroneously refused to grant a rehearing, and render a judgment against the defendants in damages.

We can not see our way to this result.

We do not regard the evidence as having established that the sheriff or his deputies acted without probable cause in making plaintiff's arrest, and in incarcerating him in jail. The record is barren of evidence tending to show malice on his part.

The sheriff acted circumspectly and with due deliberation, and within the bounds of his duty and discretion as a public officer. His duties are frequently delicate and difficult, and his responsibilities are great; and this record furnishes no proof of any tendency on his part to wantonly abuse them.

Judgment affirmed.

NICHOLLS, C. J., dissents.

## ON REHEARING.

NICHOLLS, C. J. We are dealing in this case with the arrest by the sheriff of Ouachita, of a citizen of Louisiana, upon a claim made that such citizen had committed a felony in the State of Alabama, when the sheriff made such arrest, without holding in his hand, at the time, a warrant for the arrest.

The district judge having instructed the jury that sheriffs were authorized, under certain circumstances, to arrest, without warrant, parties for alleged commission, in the past, of crime, informed them that the authority and responsibilities of the sheriff were the same, whether the crime was alleged to have been committed in Louisiana, or in some other State of the Union.

It is undoubtedly the duty of the proper authorities of the State to deliver over to justice a person found within its borders, charged with the commission of crime in another State, but the circumstances and conditions under which this is to be done are defined by statutes.

By an Act of Congress, which will be found inserted on page 204 of the Revised Statutes of Louisiana, it was enacted that "whenever the executive authority of any State in the Union, or of either of the Territories Northwest or South of the river Ohio, shall demand any person as a fugitive from justice, of the executive authority of any such State or Territory to which such persons shall have fled, and shall moreover produce the copy of any indictment found, or an affidavit made before a magistrate of any State or territory as aforesaid, charging the person so demanded with having committed treason, felony or other crimes, certified as authentic by the Governor or chief magistrate of the State or Territory from whence the person so charged fled, it shall be the duty of the executive authority of the State or territory to which such person shall have fled, to cause him or her to be arrested and secured, and notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear: But if no such agent shall appear within six months from the time of the arrest, the prisoner may be discharged. And all costs or expenses incurred in the apprehending, securing and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory." Sections 1038 and 1039 of our own Revised Statutes declare that "when (Section 1038) any person shall be charged on oath of any credible person, before any judge or justice of the peace of this State, with having committed any crime within any State or Territory of the United States, and has fled from justice, it shall be the duty of such judge or justice to issue his warrant for the arrest of such accused, and to proceed to the examination of such case, and commit or discharge the accused, as such judge or justice may determine, provided no person so accused shall be detained in custody exceeding ninety days", and Section 1039—"The Governor may in his discretion deliver over to justice any person found within the State, who shall be charged with having committed any crime under the constitution and laws of the United States or of any State or Territory".

The sheriffs of Louisiana are charged with the duty of vindicating the laws of another State only when that duty is called into exercise under the circumstances and conditions specifically pointed out by law.

Wells vs. Johnston, Sheriff, et al.

In the case before us, it appears that in the Spring of 1892, the grand jury of Clarke county, Alabama, indicted Ben Franklin and Dick Walker for having murdered one Joe Cassidy in 1891.

They were not brought to trial.

In 1892 T. J. Broadway, who was a deputy sheriff of Clarke county, came to this State, either on a visit to John and Alexander McKaskill, planters, living near Monroe, or on account of business relating to, or in connection with them. He brought out from Alabama a number of negro laborers for those parties, and while in Ouachita parish he was led to believe that two men living in that neighborhood were Franklin and Walker. On his return to Alabama he informed the sheriff of Clarke county of his suspicions.

Broadway returned to Louisiana in January, 1897. Prior to doing so he had a conversation with Taylor, the sheriff of Clarke county, in reference to Franklin and Walker, for whose capture a reward had been offered, and it was understood and agreed between them that Broadway should attempt to "locate" these men and have them returned to Alabama. Whether the trip to Louisiana was especially for this purpose, or whether it was simply a matter to be investigated by him only incidentally, while in Louisiana, for other reasons, does not clearly appear.

Upon reaching this State, Broadway commenced making inquiries which resulted in his reaching the conclusion that the plaintiff in this suit was Ben Franklin, the party charged with murder in Alabama.

Before reaching this conclusion he called upon the sheriff of Ouachita, and told him what service he was engaged in. He had then in his possession what purported to be a couple of warrants, directed by the court of Clarke county, Alabama, to any sheriff of the State of Alabama, reciting the fact of the indictment against Franklin and Walker for murder, one warrant authorizing and directing the arrest of Franklin, the other authorizing and directing the arrest of Walker, and he had also in his possession a letter from the sheriff of Clarke county, in which a description was given of Franklin. These papers were shown to the defendant. In the course of this interview the defendant says he understood Broadway to say that he had been "working up" the case for some time, and that the parties named were then in the western part of Ouachita parish. Broadway asked defendant whether, when he got them located, he would let his deputy, Mr. Griffon, go with him to make the arrest, and defendant told

him, "Yes." Defendant testifies that Broadway came after this to see him, and told him he had located the men, and that he was ready, and that his deputy, Griffon, and Broadway went out and made the arrest. He says that Broadway told him he did not know Franklin personally.

We ascertain from the testimony that at the time of his arrest the plaintiff was engaged in getting out staves, having several employees working under him, one a man by the name of Walker.

On reaching the place where the arrest was made, a few words passed between the parties, and after Broadway's looking at the plaintiff and nodding, the deputy sheriff arrested him, and upon Walker's giving his own name, he, also, was arrested, and the parties were taken to Monroe as prisoners. No warrant was shown to the parties at the time of their arrest, nor were they then informed what the charge against them was.

On reaching Monroe they were taken to a restaurant for supper and the defendant sent for. After supper the party proceeded to the jail, and there defendant read them the warrants against Franklin and Walker, which Broadway seems to have given him—the one as to Franklin bearing, it may be stated, no seal upon it.

Defendant asked the plaintiff and Walker whether they could identify themselves, up to and back of the period of the murder, saying that if they could do so, he would release them. Walker stating that he was known in West Monroe was sent there under guard and having satisfactorily shown that he was a native of Union parish, he was discharged.

Plaintiff not being able to so identify himself, was placed in the cage in the prison, May 18th, 1897, and remained there seven or eight days, at the end of which time the defendant, of his own motion, discharged him. In the interval between the two dates, a photograph of the plaintiff had been taken and forwarded to the sheriff of Clarke county, and it was by reason of a letter from him after receipt of the photograph, expressing doubts as to the identity of the plaintiff, that he was released.

This suit, filed June 11th, 1897, followed. It went to trial on November 16th, 1897.

On the 20th of November, 1897, an indictment was found against the plaintiff as George H. Wells, charging him with having obtained a wagon and yoke of oxen from one Alfred Elmore on false pretenses.

On November 26th, 1897, the District Attorney entered a *nolle prosequi* in the case.

On the 22nd of October, 1897, Broadway made an affidavit before Charles Schultz, Justice of the Peace of the Third Ward, Parish of Ouachita, in which he deposed that Ben Franklin, *alias* George Wells, murdered one Joe Cassidy in Clarke county, Alabama, in the latter part of the year 1891, and prayed that said Ben Franklin, *alias* George Wells, might be apprehended and held to answer said complaint.

On the same day the justice of the peace issued a warrant to the sheriff of the parish of Ouachita commanding him to forthwith apprehend Ben Franklin, *alias* George Wells, of the parish of Ouachita, and take him before said justice to answer said complaint. This warrant was placed in the hands of the sheriff, but was not executed at the time of the trial, defendant stating that his reason for not acting was that he was waiting for requisition papers which had been applied for.

In fact, on the 18th of November, 1897, the Governor of Louisiana issued a warrant in which he authorized the sheriff of the different parishes of the State to apprehend Ben Franklin, who stood charged with the crime of murder and as being a fugitive from justice from Alabama, and to deliver him to R. L. Broadway, the duly authorized agent of the State of Alabama, the warrant reciting that it was issued by reason of the production to him of a lawful requisition to that effect from the Governor of Alabama and upon the production to the Governor of Louisiana of the requisite evidence to justify the same. The requisition of the Governor of Alabama bears date the 13th of November, 1897.

On the 2nd of November, 1897, upon the application of the plaintiff, a writ of *habeas corpus* issued from the district court for the parish of Ouachita, comamnding the sheriff of the parish of Ouachita, in whose custody plaintiff alleged he was illegally detained by said sheriff as being Ben Franklin, charged wtih murder in Clarke county, Alabama, when he was, in fact, not Ben Franklin, to bring the plaintiff before the judge of said court and to state the reason why he kept plaintiff imprisoned and deprived of his liberty.

The sheriff answered stating, he held relator under the above referred to warrant of the Governor of Louisiana and the requisition of the Governor of Alabama, and averring that he had reason to believe and did believe that the name of George Wells was fictitious and that

the party in his custody was in truth and fact the party for whom the warrant was issued and the one against whom the charge of murder was pending in the State of Alabama.

On the 27th of November, 1897, the district court, after hearing evidence in the *habeas corpus* case, rendered judgment in favor of relator, and ordered the discharge of the plaintiff.

In the letter of January 18th, 1897, from the sheriff of Clarke county to Broadway, written prior to plaintiff's arrest (the same letter which defendant speaks of as having been shown to him, by Broadway) after giving a description of Franklin, among other things he says: "If I send you requisition papers can you have them arrested and put in jail?" And again, "I sincerely trust that you have the right men located, and as soon as you get this description of Franklin, if its suits, you can get the sheriff to arrest them; please wire me and I will get the necessary papers and get you to have the arrests made."

The evidence shows that the plaintiff, while under arrest and in jail, was kindly treated, and the defendant in his testimony, declares that he had no malice at all towards the plaintiff, and in so far as that word would be used in the sense of personal ill-will, or dislike, or prejudice, that is doubtless true.

Defendant argues, in his brief on rehearing, that the courts of this State have never drawn the distinction between actions for false imprisonment and those for malicious prosecution, which the courts in the common law States have done, and that the requirements of malice and want of probable cause, called for in an action for malicious prosecution as the basis for an action for damages, is likewise called for in an action for false arrest and imprisonment.

He also claims that if there should be a difference in this respect, that the plaintiff, by the use of the words, "maliciously", and "without probable cause", has elected to make the present an action for malicious prosecution, and must be governed by its rules and prove his allegations as to malice and want of probable cause.

We do not think that the plaintiff charges the defendant with having originated a prosecution against him, either malicious or otherwise, but that at the instance and upon the representation of other parties he, the sheriff of Ouachita parish, had first illegally arrested him and subsequently had illegally imprisoned him and kept him imprisoned.

While our Code in dealing with offenses and *quasi* offenses has used very general language declaring, in Article 2315 of the Civil Code, that "every act of man that causes damage to another obliges him by whose fault it happened to repair it", and has not attempted to fix or classify faults in that particular article, our courts have constantly recognized that what might be regarded as legally a fault under one set of circumstances would not be so under another, and that acts done by a person holding certain relations or capacities might be perfectly justifiable which, if done by another in a different capacity, or holding a different relation, would be attended by penalties, and they have denied, narrowed or broadened relief as different cases were presented in which a fault was charged according to known and fixed rules applicable to them.

We are of the opinion that a sheriff, the exercise of whose authority is dependent upon the existence of conditions precedent, and who takes action in the absence of the same, occupies as to liability a very different position from one who is hampered by no such conditions, but has had entrusted to him the duty of acting for the best interests of the community in which he lives, under differing and varying circumstances, according to his best judgment and discretion.

Examination of this record and of the law applicable to the state of facts which it exhibits has satisfied us that the arrest of the plaintiff, by Deputy Sheriff Griffon, at the instance of Broadway, was without legal authority, and so, also, was the imprisonment of the plaintiff by the sheriff, himself, in the jail at Monroe, after his arrest.

This is not a case of malicious prosecution, but of false arrest and false imprisonment by the sheriff.

False imprisonment has been defined to be "the unlawful detention of a person contrary to his will either with or without process of law", but the Supreme Court of Wisconsin declared in Murphy vs. Marston (58 Wis., 276), that "an imprisonment, even though caused by a malicious prosecution, is not false, unless extra judicial or without legal process".

In its nature it is closely allied to malicious prosecution. Two things are essential to constitute the offense. First, detention of the person; second—the unlawfulness of such detention.

The unlawfulness of the detention is the *gravamen* of the offense; hence, it may be committed without malice on the part of the person causing the detention. It is not necessary that the unlawful act

(false imprisonment), be committed with malice or ill-will, or even with the slightest wrongful intention; consequently, the question of malice is immaterial, except as it may affect the question of damages.

The wrong constituting false imprisonment, differs essentially from the wrongs constituting malicious prosecution, malicious arrest, assault, and assault and battery, though all these wrongs may sometimes be united in one comprehensive and aggravated wrong.

It has been held, that a sheriff is liable for arresting the wrong person, even though it be made under an honest mistake, and that the unauthorized continuance of an imprisonment, continued beyond reasonable bounds, though lawful at first, becomes a false imprisonment.

The above principles, drawn principally from the American and English Encyclopædia of Law, volume 7, *verbo,* False Imprisonment, pages 663, 664, and supported by citation of numerous authorities, are, we think, very generally accepted as correct.

The mere fact that, in the statement of a cause of action, plaintiff uses allegations which would cause the action to be sustainable as one for malicious prosecution, would not cause it to fail as to one for false imprisonment, where the other averments are of a character to maintain it as such.

Though the pleadings and the evidence might not warrant a judgment for damages for malicious prosecution, they might justify a judgment for false imprisonment.

The presence in plaintiff's petition of charges against defendant of having acted maliciously and without probable cause, was doubtless by way of aggravation and to affect the *quantum* of damages.

We are of the opinion that a Louisiana sheriff, applied to to arrest and imprison a person as having committed a crime in another State, should, before taking action, require the applicant to conform to the requirements of Section 1038 of the Revised Statutes, by making the affidavit therein referred to, and causing the warrant therein provided for to be issued.

It is true that the necessity of even that situation might throw upon the sheriff the *onus* of arresting, for the purpose of an examination, the person designated in the warrant, but the risk, under such circumstances, would be legally imposed and not a self-assumed responsibility, and would be tested, as to results, by that fact. We do not

mean to say that exceptional cases might not occur which, from their special features, would justify a sheriff in departing from this course, but the present is not one of such cases.

We are of the opinion that there was no reasonable ground in this case for summarily arresting and imprisoning the plaintiff, at the instance of Broadway and upon the mere suspicion which he entertained as to the plaintiff and Ben Franklin being one and the same person.

He confessedly had never seen him, and even if he had knowledge of any facts on which such a suspicion rested, they do not seem to have been communicated to either the sheriff or his deputy.

The whole matter seems to have been recklessly turned over to the judgment of Broadway—upon whose nod the deputy sheriff acted.

If Broadway had in his possession a description of Ben Franklin, the deputy should have called for it and acted on that description on his own judgment and not upon that of Broadway.

It is intolerable that a citizen of Louisiana should be summarily arrested and imprisoned upon the mere suspicion of a party acting as Broadway evidently was in his own personal interest, to secure an expected reward.

The sheriff in this case seems to suppose it to have been his right to hold the plaintiff in custody until he should have affirmatively shown his antecedents and former history. Plaintiff was called upon to do nothing of the kind. On the contrary, it was the sheriff's duty to justify his arrest by proof of the identity of plaintiff with Ben Franklin.

There was nothing in the circumstances of this particular case to make it an exceptional one. Plaintiff had been living openly in Ouachita parish for a long time as a citizen, had bought property and married there, and was giving no sign of an intention to become a fugitive. There was no necessity whatever for the unusual and hasty action taken in the premises. We are satisfied under the evidence that plaintiff is not Ben Franklin. The sheriff in releasing him of his own motion, recognized by his conduct that his action had no basis to rest upon, and nothing occurred afterwards to justify a change of opinion on that subject. Defendant's counsel suggests that plaintiff in his testimony has given a suspicious account of himself contradicting his own witnesses as to his past life.

We do not think the question before us is as to who the plaintiff may really be, but it is as to whether he be Ben Franklin or not.

If he be not Franklin, it is immaterial for the purposes of this litigation who he may be. There was ample time between the release of plaintiff, the institution of this suit and the judgment therein, to have established through Alabama witnesses, if it was possible to have done so, that plaintiff was really the person charged with the murder of Cassidy.

We put no faith whatever in the testimony of the three negroes placed on the stand. We have referred in this opinion to the judgment of the district court releasing plaintiff under the writ of *habeas corpus*. That judgment is not strictly before us, for it occurred after the judgment in this case was rendered, but it has been referred to by the defendant in his brief, and the only effect of that fact is to have confirmed an opinion which would have existed without it.

We have no reason to suppose that defendant acted in this matter maliciously, that is, with the intention of injuring the plaintiff. We do think, however, that he acted without legal authority, and in utter disregard of plaintiff's personal rights, though under a mistaken idea as to what those rights were and as to how far his own authority extended.

Plaintiff cannot be made to suffer for defendant's misconceptions upon these subjects.

We do not think this is a case where plaintiff is restricted to only actual damages. Those damages have not been very clearly shown, but we feel ourselves authorized, as matters stand, to close this litigation by fixing an amount as damages which will do justice between the parties. In fixing the amount we think it proper to say that we have considered, by way of mitigation, the absence of any actual malice by defendant towards plaintiff.

The claim against the sureties on defendant's bond has not been alluded to in this court, is not pressed, and we presume plaintiff's real attack is directed against the sheriff himself.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the verdict of the jury be set aside and the judgment herein appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff, George H. Wells, do have and recover judgment against the defendant, David A. Johnston, for the sum of three hundred dollars with costs in both courts.

WATKINS, J., dissents.