BREAUX, C. J.
Plaintiff, a merchant residing in. the town of Covington, sued the defendant E. J. Frederick, as surety on the official bond of Frederick’s principal, the marshal of the town, for damages in the sum of $500, and he sues the marshal of the town for $3,500 for an arrest which plaintiff avers was malicious, and without cause, and for imprisonment — about one hour’s time.
The defendants took issue with plaintiff, and denied that he had been wronged in any way.
The judge of the district court before whom the case was tried rendered judgment for defendants.
The facts are, as set forth by the record, that plaintiff and the town marshal had been quite unfriendly toward each other since a number of years.
The cart of the defendant marshal was at work hauling shells to fill a low place in the town. It passed near and in front of plaintiff’s place, where he happened to be standing, when the plaintiff, addressing himself to the negro driver, said to him, in substance, that one of the chains was unfastened, and that the mule was pulling on one chain.
This must have angered the defendant, who was standing near. Instead of taking these as words of peace and good will, if not to him, at any rate, uttered for the sake of the mule, he (the defendant) manifested temper. He warned his driver in emphatic words that things must be done as he directed, and clearly intimated that he would endure no one’s interference in the work of filling up one of the low places in the town of Covington.
To this point of the animated controversy plaintiff had the decided advantage, for, addressing the marshal in words which we take to have been intended as explanatory, and not with the view of exciting a quarrel, he said substantially that he only sought to direct the driver’s attention to the fact that the chains were not properly hitched. These words, inoffensive as they were, were met by the reply substantially that he (the marshal) was in command, and that he would brook no one’s interference.
At that moment defendant had his foot on one of the steps leading to the property of which plaintiff is the owner. This afforded him an opportunity to turn the tables against his opponent. He said to him:
“You may be the boss of this town, but you are not the boss of this market shop. You take your foot off my place.”
A peremptory summons that did not go unheeded.
By this time plaintiff saw that the marshal had grown pale in the face, which he construed as evidence of great anger. He informed the officer that he could not “scare” or “bluff” him.
Thereupon they separated; the marshal directed his steps in one direction, and the plaintiff in another.
*885 According to the testimony of some of the -witnesses, it looks as if the latter’s wrath was still warm, although he had stepped some little distance, for, while talking to two persons whom he met, he again referred to the change of the marshal’s complexion, and said he did not care “how pale Mr. Dulion was; he could not bluff him.”
Up to this time in the account of the trouble the exciting causes had not provoked very loud utterances. There had been no peace disturbance, and nothing to disturb public equanimity. From this time there is conflict in the testimony. The witnesses are about equally divided as to number between those who thought there was disturbance of the peace and those of a different way of thinking.
The defendant marshal came up to plaintiff, took him by the shoulders, and announced to him that he was under arrest. Plaintiff actively demurred, and went to the extreme of resisting the arrest, and of the struggle that ensued different account is set out by the evidence. Plaintiff has it that when defendant caught him on the right shoulder he grabbed defendant with his left hand, and his nails, being long, cut him in the face. The defendant, on the contrary, says that he was struck in the face by plaintiff, and that plaintiff’s blow drew blood.
Defendant called for his two aids of the public force of the place, and together they forcibly carried plaintiff a short distance. Plaintiff’s better judgment asserting itself, he then consented to accompany the police officer, and went to jail, where he remained a short time — about an hour.
The quarrel was over with, and there was no reason for the arrest and imprisonment. The language used in the second talk, which defendant may have overheard, was not addressed to him, and was not insulting.
An affidavit was afterward made by the marshal against plaintiff. The mayor said as a witness that the evidence was conflicting; it was about equally divided in its account of the “row,” as he termed it.
“Three or four swore there was no disturbance of the peace, and about an equal number swore there was.”
He was satisfied there had been a “row” between the two.
In a spirit of kindness, he gave himself the trouble of calling upon the two — plaintiff and this defendant — and thought that, as they agreed to drop the matter, it was best for the two, as the regular course of justice would not be disturbed by his not imposing a fine on plaintiff, to discharge the plaintiff.
The plaintiff did not choose to let the matter rest. He claims damages for the illegal arrest.
Defendant was without authority to arrest plaintiff, as there had not been a breach of the peace. The quarrel had subsided. If he had the least cause to arrest him, as there had been, no breach of the peace, he should have obtained a warrant from the proper authority. This he did not do. Officers of the police of a municipality should never forget that they owe protection to the members of the community; to the bitter enemy as to all others; all are entitled to his protection. Their ill will and enmities, however much it may be met by counter ill will and enmity, is not cause,for resorting to an arrest. An officer has no right to divide right and wrong by the slender line of his personal feelings, and acts having the least appearance in that direction are to be avoided.
The mayor of the town did not find for defendant in passing upon the officer’s affidavit.
To accentuate our views, we will have to reverse the judgment here, and grant damages.
It is therefore ordered, adjudged, and decreed that the judgment be avoided, annulled, and reversed; that plaintiff recover *887 judgment from defendants iñ solido — i. e., Dulion and E. J. Frederick — in the sum of $100 damages, and that defendants pay costs •of both courts.