BREAUX, C. J.
Plaintiff sued the defendants, Edward S. Whitaker, Ferdinand De Ranee, Robert Stubbs, and Patrick Dale, to recover the sum of $20,000.
Plaintiff was arrested on the 16th day of June, 1905, at about half past 8 o’clock in the morning, while he was on his way to his place of business, on the order of the inspector of police, issued to those by whom the arrest was made. Plaintiff was arrested without a warrant and without an affidavit preceding the arrest. He was taken to the police station and incarcerated. A concealed weapon, to wit, a pistol, was found on his person. »
De Ranee, who was chief of the detective force, testified that he made an affidavit against plaintiff, about three-quarters of an hour after the arrest, charging him with conspiracy to murder, and with being an accessory before the fact of grand larceny, and charging him with carrying concealed weap *907 ons. According to the testimony of plaintiff as a witness, there was a delay after the arrest of about 3% hours before the affidavit was made.
The judge of the First city court, at about 10 o’clock, came to his office, took up the matter of plaintiff’s arrest, and fixed the amount of his bond at $2,500. Plaintiff was then released on bond. It was about 1 o’clock p. m.' when plaintiff was released.
Plaintiff’s complaint, substantially, is that the purpose of the arrest and everything connected therewith was to humiliate and injure him; that the first-named defendant, the inspector of police, acted without probable cause; that he knew that plaintiff had done nothing to subject him to an arrest; that he, the principal defendant, was actuated by malice and enmity.
His long residence here, the fact that he owns property, and that he is a taxpayer, plaintiff averred, were reasons why he should not have been molested in the way that he was; that it was all the result of a conspiracy for the purpose of crushing him; that it was a misuse of power.
The defendant inspector of police in substance controverts plaintiff’s charges and avers that he was prompted by no ill will in ordering the arrest and in directing the imprisonment of plaintiff; that he looked upon the act as proper.
The other defendants set forth, substantially, that they obeyed the order of their superior officer; that the arrest was made in an orderly manner; that they said nothing to in the least humiliate or hurt the feelings of the plaintiff; that they took him to the station and placed him in charge of the, proper authority. They claim that they had the right to arrest with or without a warrant, and the fact that they had no warrant is not a cause to mulct them in damages.
There was no illegal combination:
The asserted conspiracy of which plaintiff complains presents the first point for our decision.
We have noted that the plaintiff avers that his arrest and imprisonment were brought about by a conspiracy entered into among a few citizens of the community named in the course of the trial.
Testimony was heard. It does not sustain the complaint.
Conspiracy has been briefly defined as “an agreement for an unlawful purpose, or to effect an unlawful purpose by an unlawful means.”
The meetings of the few citizens, four or five, to which the testimony alludes, do not fall within that definition. The testimony does not disclose the fact that there was a plot on the part of these citizens against any one to have him imprisoned; nor does the testimony show that they combined in any way with the inspector of police.
The police department is one of the important and efficient agents of good local government. It properly engages public attention.
It was thought proper, as we take it, that there should be some change in the poiice, and among those favorable to a change was the plaintiff himself. Subsequently his opposition was directed against the selection which was afterwards made, and that was all.
In all of this there was no conspiracy. There was no design proven on the part of these citizens to violate the law in so far as plaintiff was concerned.
Testimony not forming part of or related to matter in hand:
Having arrived at this conclusion regarding conspiracy, we must pass to the next point at issue, which is that certain acts in the past life of plaintiff should not have been admitted in evidence over his objection, as they were not pertinent to the point at issue.
We are not inclined to the opinion that a *909 complainant who seeks relief for an asserted wrong can be subjected to a scrutinizing cross-examination regarding all incidents in bis life in tbe remote past. Part of tbe ■evidence, that which was pertinent, was admissible in mitigation of damages, but not all the testimony offered.
On cross-examination testimony was admitted of facts committed when plaintiff was a boy. Such testimony can have no bearing bn this cause.
The general reputation and even specific acts of a plaintiff who seeks damages for personal injury, as- set forth in .this cause, may be proven in mitigation of damages; but they must be pertinent in order to be admissible.
In our opinion much of the evidence • just alluded to can be left out of consideration. It forms a great part of the bulky record. It remains that testimony regarding reputation Is admissible, also of particular-pertinent acts, in mitigation of damages. Wigmore, vol. 1, p. 248, § 248.
The arrest;
We have not found that in making the arrest itself plaintiff was subjected to rude treatment. He was conducted in a quiet manner to the police station by the police officers. While there, he had to wait for 'a time; That is an inconvenience to which any one may be subjected, guilty or innocent. Each must take his turn and wait his time. Those in charge seem to walk with heels of lead at times; but, if malice be not shown and a determination to humiliate, there is no ground for damages. Those who are not prisoners sometimes have to wait and lose valuable time in waiting. It cannot be helped. It is usually accepted with patience as the best thing to be done under the circumstances. The law does not remedy all evils. It cannot, in the nature of things, provide relief for all annoyances. Any person — the most innocent — may be arrested and compelled'to answer to some charge. The truth of the charge is the objectionable feature from all points of view. The ' arrest itself is frequently only secondary. We must say, however, that no one is justified in bringing a charge and causing an arrest recklessly. If he does, he can be made to answer in damages. ' '
Tne reports of grand juries, which were admitted in evidence, we pass' over without comment, as w-e consider them" disposed of by the views previously expressed. They are of no importance in passing upon the issues of the case. The main question is whether the defendant had cause to apprehend danger or not, -and whether there was reasonable cause for the arrest.
Declaration of asserted' party to the plot to prove probable cause;
The next ground pressed upon -our attention is 'that the'statement'made by á certain itinerant newspaper man a few days before the arrest, and in which he told a long story about assassination -and attempts to influence him to become a party to the contemplated assassination, should not have been admitted. The objection of plaintiff on this point, in substance, is that the written declaration of acts not connected with plaintiff in any way is at most hearsay and inadmissible. But this person did connect plaintiff’s name with the purpose, as he stated, of assassinating the inspector.
If those in charge of the police cannot act upon information received unless it first appears that the information was known in some way by the one against- whom it is brought, then it would be very seldom possible' to act upon information received in causing an arrest.
Testimony as relates to probable cause:
We will state, in the first place, that the crime of grand larceny should not have been charged. There was no basis for it, and it iollotvs that, as to it,- the arrest was illegal *911 and improper, and should not have been made.
In fact, there was bad blood between plaintiff and the principal defendant. One was as active as the other to believe that his enemy was capable of committing any and every wrong.
The charge of conspiracy to murder was, as before stated, made on information received. The character of the testimony as regards this information, and whether it was such as to cause apprehension, presents the important phase of the legal dispute.
We have given it our best attention. This information came from a number of persons in the different walks of life. Some of it came from the most influential, and some of it from the lowly and humble. A saloon keeper personally informed the inspector of a plot to take his life. Two detectives testified that a highly prominent officer called upon the inspector and informed him that he had been told of an intention to assassinate him. This, it appears, was followed by the arrest of the itinerant and reckless scribbler before mentioned, who disclosed in writing and under oath that there was a plot laid by the plaintiff to take the life of one of the defendants. And still another witness, who had conversed with a woman of the town with some particularity, spoke of a plot directed against the inspector. The cyprian said to the witness that it caused her some concern, as the witness who repeated her talk to the defendant testified.
These were grounds enough to excite some apprehension. Did they amount to a probable cause?
The greatest difficulty springs from the fact that the inspector was acting for himself, and not for another whose life it was thought was in danger. The police authorities in the nature of things are expected for the public safety to be more forbearing when they are concerned than when others are concerned. This is -the weakness of the principal defendant’s cause. There was surely ample ground to protect another or to act toward his protection. If another had been concerned, it would have been a d'ereliction of duty not to have sought to ferret out the talked-of assassination.
Having taken that view as relates to third persons, the defendants are entitled as officers to the benefit of a doubt. Their purpose may have been to prevent disturbance and disorder.
From that point of view, we hold that they acted with probable cause.
Is Act No. 32, p. 53, of 1904, unconstitutional?
The plaintiff was arrested without a warrant.
In .his motion for a new trial, plaintiff attacked the act of the Legislature before cited (under which defendant acted in arresting him without a warrant) as unconstitutional, as it violated article 4 of the amendments to the Constitution of the United States and article 7 of the state Constitution, which, mover alleged, prohibited arrest without a warrant provided for in the act. The argument is, on behalf of 'defendant, that the objection should have been raised in the lower court.
With reference to this point — that is, the unconstitutionality of the statute — it has-been decided that, in order that the Supreme Court can have jurisdiction, the question of unconstitutionality should be raised in the-lower court. We think it was sufficient for-it to have been raised on the motion for a new trial. It was in time. In the decision, of the district court the question of the constitutionality was discussed for the first time,, as we take it. We shall, therefore, consider the question of unconstitutionality raised by-plaintiff.
The statute authorizing an arrest with or-without a warrant does not violate article- *913 7 of the Constitution. That article refers to search warrants, which can issue upon probable cause, supported by oath or affirmation. The act is not unconstitutional under article 7 of the Constitution.
Taken in its broadest view, the law might be taken in an extreme case to violate article 2, which ordains that no person shall be deprived of liberty except by due process of law.
If an arrest is unjustly and arbitrarily made, it is an illegal and criminal act, and in violation of the Constitution, which the law (Act No. 32, p. 43, of 1904) would not protect. It follows that under reasonable conditions the law is constitutional.
In Pennsylvania, the organic law contains the following:
“That no arrest is lawful without a warrant issued on probable cause supported by oath.” Leger v. Warren, 51 L. R. A. 203, note.
The Supreme Court of that state, none the less, held that:
“A peace officer is not liable in trespass and false imprisonment where he makes an arrest without a warrant on a reasonable charge of felony.”
There is a long list of decisions. 51 L. R. A. 203, notes.
We leave the subject in hand to take up for a moment the matter of false imprisonment:
Plaintiff’s cause includes alleged illegal arrest and false imprisonment. It is sufficient to state at the outset on this point that an illegal imprisonment, even if obtained without malice and without probable cause, is generally considered actionable. There is a difference between malicious prosecution on the one hand and false imprisonment on the other. In Ihe former as a cause of action the prosecution for damages may be maintained, according to a number of decisions in other jurisdictions, although the party who obtained the imprisonment acted without malice and upon reasonable and probable cause; while in the latter, to wit, false imprisonment, an action cannot be maintained if it be shown that the party by whom the-complainant was prosecuted acted in good faith and with probable cause.
As an original question it is attractive and commends itself. None the less there are decisions to the contrary.
In Louisiana, particularly in New Orleans, under the statute in question, decisions cannot well be otherwise. It has been several times held that probable cause may be considered in case of imprisonment.
Complainant, in the case cited infra, asked for damages on the ground of false imprisonment. The court (Judge Spofford was the organ) strengthened the text of the opinion by quoting from 2 Greenleaf, § 455. The quotation goes to show that there is pertinency in probable cause in a case of false imprisonment.
Vide, also, Mosley v. Yearwood, 48 La. Ann. 334, 19 South. 274; Womack v. Fudikar, 47 La. Ann. 36, 16 South. 645; Lyons v. Carroll, 107 La. 471, 31 South. 760; Boutte v. Emmer, 43 La. Ann. 980, 9 South. 921, 15 L. R. A. 63; Gammage v. Mahaffey, 110 La. 1008, 35 South. 266.
There are a number of decisions in other jurisdictions holding that probable cause-may be considered in justification. Cyc. vol. 19, p. 319.
Learned counsel for plaintiff confidently cites Wells v. Johnston, 52 La. Ann. 713, 27 South. 185. It is not similar to the case at bar.' It related to the arrest of a fugitive from Alabama, and came within the prohibition of section 1038 of the Revised Statutes, which has no application to the pending case. Even in that case, and under the section cited supra, the court said that exceptional cases might occur justifying the arrest. In that case the man was arrested and kept in-prison without a. warrant.
*915 Smith v. Dulion, 113 La. 886, 37 South. 864, is' also cited, in which the court said that the marshal of the town of Covington, before making the arrest, should have obtained a warrant. There is a difference in the two cases. In the cited case the town has comparatively few inhabitants, and there is no authority to arrest without a warrant. We have seen that there is a statute on the subject as relates to New Orleans. Act No. 32, p. 43, of 1904.
We have had occasion to refer to the above-cited statute. It is not as broad in scope as defendants would have. It does not authorize the arrest by a peace officer at will.
The well-settled principle is that a police officer may arrest on reasonable charge of felony. He will not be liable if no felony has been committed, but there must proper record be kept.
This is the common-law rule, which generally prevails. It is a local regulation as well.
This is the extent under the statute in question. The statute and the decisions afford protection where the peace officer acts on reasonable probable cause, and that is all. It is only to that point that it is a protection to the officer by whom the arrest is made. It must appear clearly that there was probable cause.
With ' reference to carrying concealed weapons, the charge did not justify the arrest of plaintiff. The fact that plaintiff had a concealed weapon did not become known until after the arrest, and therefore cannot be considered in matter of the arrest.
It was held, however, in a case somewhat similar on this point, that the evidence was admissible in mitigation. Another of the grounds which go toward mitigating dam ages: In the case to which we refer: “The evidence did not become known to A. until after the commencement of the suit. The court excluded it. Held, that the evidence was admissible in mitigation of damages.” Beckwith v. Bean, 98 U. S. 267, 25 L. Ed. 124.
For reasons assigned, the judgment is affirmed.
PROVOSTY, J., concurs in the • decree. LAND, J., takes no part, not having heard the argument.