STATE OF CONNECTICUT *vs.* CHARLES ENGLE.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 13th—decided November 15th, 1932.

*Thomas R. Robinson,* Public Defender, for the appellant (the accused).

*Samuel E. Hoyt,* State's Attorney, with whom were *Abraham S. Ullman,* Assistant State's Attorney, and *Irving Sweedler,* for the appellee (the State).

HAINES, J. At the trial the State offered evidence to prove and claimed to have proved that on February 1st, 1920, the accused was living in New Haven with his wife in a two-room furnished apartment, one room being used as a bedroom and one as a kitchen, and both had been employed in New Haven for three weeks or more. On Sunday, February 1st, 1920, about nine-thirty in the forenoon, Currier and Healy, two detectives of the New Haven Police Department, claiming to have a letter in their possession containing information relative to the accused and having his photograph, were admitted to the building by the landlady, who recognized the photograph as that of the accused and, acting by direction of the detectives, knocked on the door of the apartment occupied by the accused and his wife, saying a gentleman wanted to see him. The accused and his wife had just arisen and were not fully clothed, but the accused soon opened the door and admitted the detectives, who then said they were looking for D. J. Connolly and showed him the photograph. Though first denying that the photograph was of himself, the accused finally admitted it was and after further questioning was ordered to dress, take certain articles, such as his watch and money, leaving some of the latter for his wife, and go with the detectives to the police station to await the arrival of officers from Chicago. They told him they had a letter stating that he was wanted in Chicago for a bond forfeiture connected with the theft of a motor vehicle. After dressing, the accused went to the dresser at the left of the door of the kitchen and opened a drawer to get a handkerchief. He also took from the drawer a small package, which the officers at the time could not see, making a remark about putting it in the trunk which stood just inside the door of the kitchen. His wife was standing near and to the right of him and

near the door of the kitchen. She took hold of the package and it was exposed slightly to the view of Currier who recognized it as a revolver box and grabbed for it and attempted to take it from the accused and his wife. A struggle ensued, continuing through the door into the kitchen, where the accused took the revolver from the package. Currier had crowded in in an attempt to get the weapon and prevent the accused from shooting. During the struggle the revolver was discharged by the accused, the bullet entering the body of Currier. Healy, who was in the bedroom, heard the shot and ran into the kitchen, where the accused stood near the center of the room with the revolver in his hand, while Currier was lying on the floor. Healy grappled with the accused and they rolled over one another upon the floor, the revolver being discharged in the struggle and the bullet entering the groin and leg of Healy. The accused freed himself, stood up and struck at Currier with a chair and the latter then went through the bedroom into the hall. The accused endeavored to leave by the kitchen door into the hall, but dodged back as Currier fired through the door and then fired through the hall bedroom door also. Unable to escape by either door, the accused, pointing his weapon at Healy, who was then on the floor, backed to the window of the kitchen and escaped through it.

In addition, and in so far as it was inconsistent or contradictory in important respects with the State's evidence above summarized, the accused offered evidence to prove and claimed to have proved that when the officers came to his apartment he was twenty-one years of age and his wife seventeen and that she was then pregnant; that he had been arrested some time before in Chicago because of his connection with a so-called automobile ring and had received a warning not to appear for trial, and that both he and his wife had

been employed in New Haven for a month before the visit of the detectives; that when he opened the door Healy pushed roughly past him into the bedroom with Currier following and the accused retreated into the room; that these men displayed no badge or other credential and in no way identified themselves as officers; that, after obeying the order to dress, he gave his wife some money and prepared to take leave of her, but recalling that there was a pistol in the dresser and that he had the key in his pocket, he asked his wife to take the box and put it in his trunk and that he followed her into the kitchen where, as she opened the trunk, a shot was fired and he felt a pain in his leg and upon turning saw Currier standing behind him with a drawn gun; that fearing he was the victim of an attack related to the warning he had received in Chicago, the accused grabbed the box, which was immediately seized by Currier also, and a struggle ensued in which the accused gained possession of the weapon from the box; that he did not recall firing the revolver, due to the excitement; that after being released by Currier he was seized by someone else and thrown against the wall and onto the floor but was suddenly released by the last assailant and after trying to escape by each of the doors into the hall and being met with revolver fire by Currier, he backed to the window and escaped through it; that immediately thereafter he examined his leg and found a bullet wound, the scar of which he still carries; that prior to the assault he thought Currier and Healy were probably officers, but when the assault began he believed they were not police officers but connected with the Chicago threat and were intending to do him grave bodily harm; that he had no intent to kill either man but only to escape from them, and at the time believed himself to be in danger of serious bodily harm or death, and that the circum-

stances were then such that he honestly entertained the reasonable belief that he was the victim of a serious and unwarranted attack. Neither detective had, nor had there been issued at any time in Connecticut, a warrant for the arrest of the accused.

With this evidence before the jury, the accused claimed and asked the court to charge that the arrest by the detectives was unlawful; that having committed no offense in this State and as the only charge was made by the detectives and related to some offense committed in another State, the officers could only obtain authority to arrest him as a fugitive from justice by proceeding under our statutory provisions governing the arrest and extradition of such fugitives. General Statutes, Rev. 1918, Chap. 342, §§ 6699-6712, now General Statutes, Rev. 1930, §§ 6545-6558.

It is provided in that chapter that when a demand shall be made upon the Governor of this State by the executive authority of another State for the surrender of any person charged in such State with crime, the Governor may require a prosecuting officer to investigate the demand and report to him the situation and circumstances of the person charged and whether he ought to be surrendered, and if the Governor shall find that the demand is conformable to law and the accused ought to be surrendered, he shall issue his warrant to any proper officer for his arrest and deliver it to an agent appointed to receive him. General Statutes, Rev. 1918, §§ 6699-6703, now General Statutes, Rev. 1930, §§ 6545-6549.

It is further provided that when a person is found in this State charged with an offense in another State and liable to extradition, then any judge of the Superior Court, upon information by the State's Attorney, or any City or Police Court having criminal jurisdiction, upon the complaint of the Prosecuting

Attorney, may issue a warrant for the arrest of the person charged and bring him before proper authority to answer to the complaint as in other criminal cases; but before the warrant shall be issued, some person shall make affidavit before the authority issuing the warrant, to the facts necessary to bring the case within the foregoing provisions. General Statutes, Rev. 1918, § 6705, now Revision 1930, § 6551.

It is also provided that upon satisfactory evidence under oath presented to the judge of any City, Borough, Town or Police Court or a justice of the peace, that the application by the executive of another State has been or is about to be made by the authorities of that State to the Governor of this State for extradition of the accused, such judge or justice of the peace may lawfully issue a warrant for the arrest and commitment of such accused to the jail or take bail for his appearance from day to day for not more than thirty days, and the accused shall not be detained for a longer period. General Statutes, Rev. 1918, § 6711, now Revision 1930, § 6557.

The only response to the foregoing request, which is found in the charge is the following: "As I understand the claim of the accused it is that, since it does not appear that the officers had a warrant for the arrest of the accused, any attempt at arrest was unlawful. . . . If you find that the officers went to this house and gained admission by knocking at the door, and then were invited into the house by the landlady, and then entered the apartment of the accused by his admitting them, and then proceeded by conversation to inform the accused of their mission and to ask the accused to accompany them to the police station, you would find they were not acting unlawfully; under such circumstances the accused should accompany the officers peaceably; he should not provoke a conflict and in-

vite, by undue resistance, serious bodily injury either to himself or others."

The jury could hardly have received any other impression from this charge than that the officers were acting legally in arresting the accused as a fugitive from justice, without a warrant. Whatever may be the rule in those States having no statutory provisions governing the arrest of fugitives from justice, the full and explicit provisions of our own statutes upon the subject leave no room for doubt and make the arrest of this accused by the detectives an unlawful act, since none of the preliminary steps required by our law had been taken. The jury should have been so instructed.

It has been held that the statutory conditions governing the arrest of fugitives from justice must be strictly compiled with. *Ex parte Rosenblatt,* 51 Cal. 285. Where such statutory provisions do not authorize it an officer has no authority to arrest without a warrant a fugitive from justice from another State, even upon telegraphic or personal request of the officers of the demanding State. *Harris v. Louisville, N. O. & T. R. Co.,* 35 Fed. 116; *Cunningham & Son v. Baker, Peterson & Co.,* 104 Ala. 160, 16 So. 68; *Simmons v. Vandyke,* 138 Ind. 380, 37 N. E. 973; *Wells v. Johnston,* 52 La. Ann. 713, 27 So. 185; *Scott v. Eldridge,* 154 Mass. 25, 27 N. E. 677; *Malcolmson v. Scott,* 56 Mich. 459, 23 N. W. 166; *State v. Shelton,* 79 N. C. 605.

It is a well-recognized rule of criminal procedure that, except in cases where the public security demands it, arrest without a warrant is deemed to be unlawful, though well-established and long-recognized exceptions not present in this case, exist. Except as authorized by statute, an arrest without a warrant is illegal. *Smith v. Dulion,* 113 La. 882, 37 So. 864; *Cook v. Hastings,* 150 Mich. 289, 114 N. W. 71; *State ex rel. Olson v. Leindecker,* 91 Minn. 277, 97 N. W. 972; *Mat-*

*ter of Way*, 41 Mich. 299, 304. 1 N. W. 1021. In *Scott v. Eldridge*, 154 Mass. 25, 27 N. E. 677, the defendant, who was the chief of the department of inspectors of the Boston police, received a letter from one purporting to be the chief of detectives in Philadelphia saying that the plaintiff was wanted and asking that he be arrested and charged with conspiracy to commit abortion and adding that the writer held a coroner's warrant. The court said that even if the plaintiff had committed that offense in Massachusetts the defendant would have had no right to arrest him without a warrant; that an officer may not without a warrant make an arrest for a past misdemeanor in Massachusetts though the offense had in fact been committed, unless he is specially authorized by statute to do so, and the officer could have no greater right in respect to a misdemeanor committed in another State, and his arrest in the given case was illegal. In this State a similar statutory requirement applies to arrests for both misdemeanors and felonies, the exception being where the accused is taken or apprehended in the act or on speedy information of others, the presumption being that there is not an opportunity to seasonably obtain a warrant. *Sims* v. *Smith,* 115 Conn. 279, 161 Atl. 239.

This charge, therefore, contained prejudicial error, since it stamped the arrest as lawful. The person making an unlawful arrest being a wrongdoer, the accused may properly make resistance under certain circumstances and to a certain extent as hereafter indicated.

The accused also requested the court to charge that if the jury found the accused entertained a reasonable belief that an unjustifiable assault was being made upon him with design to take his life or do him extreme bodily injury, he would be justified in defending himself, even to the extent of killing his assailant; and further, that if the shooting of the detectives in

the struggle was without any intent to kill but only a reasonable necessity to effectuate an escape from an unlawful arrest, then the shooting was justified. The appellee's brief mistakenly attributes the latter statement to the court, but the record shows that the court was reading the appellant's seventh request, remarking to the jury that it was a request, and then said: "I think I should say to you in connection with that request as follows: If you find that the prisoner was occupying a dwelling-house and resisting an unlawful attempt to enter his home by force, and should fire the shots or either of them under such circumstances as would produce in his mind a reasonable belief of imminent danger or great bodily harm to him or his wife, or death, the assault would not be criminal and under such circumstances would be excusable." The jury were also told that it was the duty of the accused to accompany the officers peaceably, and not provoke conflict and invite, by undue resistance, serious bodily injury either to himself or others, and that he was only justified in resorting to such resistance and such defense as the circumstances reasonably appeared to him at the time to require to protect him or his wife from serious bodily harm or death. The court added: "An arrest, if peaceably made, even if unlawful, does not justify the commission of a crime to prevent arrest. The law furnishes ample means for any person unlawfully arrested to try the question of such unlawful arrest. It is not for any person to set himself up as the court to determine such question. If unlawfully arrested the courts will protect and cause his discharge and he then will have a cause of action for damages for false arrest; and if unlawfully detained, a cause of action for false imprisonment. So an unlawful arrest does not justify the commission of a crime for the pur-

pose of evading such arrest or escaping from the officers."

The reference to an illegal entry into a dwelling had no relevancy under the circumstances of this case since the detectives were peaceably admitted by the accused himself. The jury were told in effect, by the remainder of the charge quoted, that the accused acted unlawfully in making any resistance whatever and that the law required him to submit peaceably to arrest although it was an unlawful one. This is erroneous, for a man is not bound to submit to an illegal arrest. *State* v. *Scheele*, 57 Conn. 307, 320, 18 Atl. 256. In *Brooks* v. *Commonwealth*, 61 Pa. St. 352, quoted in *State* v. *Scheele, supra*, the court said: "An innocent man is unconscious of guilt, and may stand on his own defense. When assailed under a pretense which is false his natural passion rises, and he turns upon his assailant with indignation and anger. To be arrested without cause is to the innocent great provocation. If in the frenzy of passion he loses his self-control and kills his assailant, the law so far regards his infirmity that it acquits him of malicious homicide." In *State* v. *Bissonnette*, 83 Conn. 261, 268, 76 Atl. 288, this court said: "The general rule is that where one, without fault himself, is assaulted in his dwelling-house, he need not retreat from his assailant, but may resist the assault even to the extent of taking the life of his adversary when necessary."

It is true, also, that notwithstanding the unlawful attempt to arrest the accused in his own house, he was not excused from the use of a dangerous weapon unless, without malice and upon reasonable grounds, he believed that its use was necessary to protect himself from death or serious bodily injury or to prevent such an unlawful arrest. The accused had offered evidence that the first shot was fired by Detective Currier,

wounding the accused in the leg, and that the latter then believed that these men were assaulting him because of the threat made against him in Chicago. With this evidence before the jury, which they were privileged to believe if they thought it credible, it was his right to have them instructed that if they did find that to be true, then the use if reasonably necessary of a dangerous weapon, without malice, could be justified under the above rule.

In *Roberson* v. *United States,* 4 Okl. Cr. 336, 111 Pac. 984, it was held that where one about to be arrested makes no effort to resist or injure the officer, but the officer nevertheless makes such a demonstration with his pistol as would cause a man in a like situation to believe that he was about to be killed or seriously injured, and such person perceives such demonstration and does believe this, he is justified in shooting the officer if he acts in good faith and under the influence of such belief, and not in a spirit of malice or revenge.

It is important that officers of the law shall be protected in the performance of their duty. It is equally important for the protection of every peaceable citizen, whatever his station, that they obey the rules of law governing the making of arrests. Where such questions as are involved in this case arise, it becomes of the highest importance that the courts should correctly define the rights of both parties and the conditions of fact upon which they rest. We cannot hold the charge in the present case to have satisfied this requirement. In the respects which we have discussed, there is prejudicial error requiring a new trial, and it becomes unnecessary to discuss other assignments of error.

There is error and a new trial is ordered.

In this opinion the other judges concurred.