fication for reversing the judgment appealed from.

Judgment affirmed.

O'NIELL, C. J., is of the opinion that there is no occasion for considering the exception of no cause of action, when we affirm the judgment rejecting plaintiff's demand on the merits, or for lack of merit; but he considers the exception well founded.

---

(106 So. 660)

No. 25550.

MARTIN v. CAPPEL et al.

(Nov. 30, 1925.)

*(Syllabus by Editorial Staff.)*

1. **False imprisonment** ⬤⇒31 — **Circumstances held not to show officers did not have grounds for reasonable belief sufficient to detain plaintiff.**

In action against coroner and peace officers for false imprisonment and malicious prosecution, circumstances *held* not to show that defendants had no grounds for entertaining reasonable belief that plaintiff was guilty of homicide or possessed of such knowledge of facts as would lead to apprehension of guilty party.

2. **False imprisonment** ⬤⇒13—**Officers should not be made unduly apprehensive they will be answerable in damages.**

Those seeking enforcement of law in administration of justice who are supported by circumstances sufficiently strong to warrant a cautious man, in belief that party suspected may be guilty of offense charged, should not be made unduly apprehensive that they will be held answerable in damages.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; John A. Williams, Judge.

Suit by Alex Hannah Martin against Marvin Cappel and others. Judgment for defendants, and plaintiff appeals. Affirmed.

John R. Hunter and T. F. Hunter, both of Alexandria, for appellant.

Hawthorn & Stafford and Peterman, Dear & Peterman, all of Alexandria, for appellees.

ROGERS, J. Plaintiff brought this suit against Dr. Marvin Cappel, coroner of the parish of Rapides, E. J. Isles, chief of police of the city of Alexandria, and Curtis H. Bordelon, a patrolman of said city, to recover damages in the sum of $3,000 for false imprisonment and malicious prosecution. The suit as against Bordelon was dismissed on an exception of no cause or right of action. As against the other defendants, it was tried before a jury, as prayed for by plaintiff, and resulted in a verdict and judgment for said defendants dismissing the suit. The plaintiff has prosecuted this appeal.

[1] The facts and circumstances leading up to plaintiff's suit, as disclosed by the record, are as follows, viz.:

Plaintiff is a public chauffeur in the employ of one Allen Biossat, in the city of Alexandria. While at his usual stand in front of the Hotel Bentley on December 30, 1921, at about 5:30 o'clock in the evening, he was engaged by a white man named J. E. Smith to meet him at the corner of Bolton avenue and Lee streets at 6:30 o'clock in the same evening for the purpose of driving Smith and a negro woman named Alzina Clinton to an assignation house in the outskirts of the city, conducted by a negro woman known as "Aunt Liza." Plaintiff met Smith and the woman at the appointed time and place and started with them for "Aunt Liza's" home. It appears that at least on one occasion previously he had taken the same couple to and from the assignation house in question. It also appears that "Aunt Liza" had removed since the previous trip made by the parties, and there was difficulty in locating her new abode. Plaintiff, following the directions of Smith, drove up the river road, by Enterprise, going towards the town of Boyce. After driving up and down the road in an effort to locate the residence of "Aunt Liza," and when near the

old Barrett place, Smith saw a light out in the field, which he thought came from the house which he was seeking. He ordered the car stopped and got out to investigate. As he approached the light, which was about a block and a half from the car, he was shot down, and the light mysteriously disappeared. No one, apparently, witnessed the shooting except plaintiff and the negro woman, Alzina Clinton, and it has never been ascertained who committed the crime, nor why.

Plaintiff brought the wounded man back to Alexandria, and, after letting the negro woman out of his car, took him to the sanitarium, arriving there about 8 o'clock that night. Smith died the next morning.

It is in evidence that, after plaintiff brought Smith to the sanitarium, he hunted up the sheriff and reported the matter to him, and then drove the sheriff to the sanitarium to see Smith, and then drove him home after an attempt on his part to interview Smith; also that plaintiff made an engagement with the sheriff to go with him to the scene of the shooting the next morning.

On the morning of December 31, 1921, the defendant coroner was summoned, about daylight, to examine a negro named Ed. Williams, who had been shot while attempting to enter a house on Monroe street. When he reached the scene of the shooting, he found that the negro was not quite dead, and he ordered him taken to the sanitarium in an ambulance which was present on the scene. Later he called at the sanitarium, where he found the ambulance on the outside with the negro's body in it; he having died in the meantime. The coroner then ordered the body taken to the undertaking parlors of Hixon Bros. While at the sanitarium he was informed, for the first time, of the shooting and ensuing death of Smith. He obtained what information he could from those in charge of the sanitarium in reference to the shooting, which was very little, although he did ascertain that Smith was shot while he was out with plaintiff in his automobile looking for a certain house.

After leaving the hospital the defendant coroner proceeded to the undertaking parlors of Hixon Bros. for the purpose of holding an inquest over the body of Ed. Williams. On his arrival there he also found the body of Smith. He first impaneled a jury for the Williams inquest. After swearing that jury, he impaneled another jury for an inquest over the body of Smith. When the jury was sworn, the jurors discussed among themselves and with the coroner the probable cause of Smith's death. One of the members of the jury, Edward Dunn, who was a lieutenant of police, related certain incidents of the previous night. He stated that he had met the plaintiff about 12 o'clock on said night, which was subsequent to the shooting; that plaintiff acted peculiarly and seemed to be bothered about something; that plaintiff and his employer were together; that they walked behind an automobile and talked for a few minutes and then plaintiff walked away, passing in front of the officer, who gave him a friendly greeting, with little or no response from the plaintiff; that this conduct was unusual in view of the friendly relations that existed between him and plaintiff; that later that morning the officer heard that some man had been shot while looking for a house in the company of plaintiff; that he made some investigation of the rumor, and it was reported to him that another driver for Mr. Biossat by the name of Bobeof had stated that there was nothing to the report, and that he had then dropped the matter. After this statement was made by Mr. Dunn, it was the unanimous opinion of the coroner and the jury that it would be advisable to hold plaintiff until the inquest could be completed. In accordance with this decision, the coroner ordered Mr. Isles, the chief of police, to detain the plaintiff until further investigation

could be made. In execution of this order, Patrolman Bordelon was sent to apprehend the plaintiff, who was taken into custody and brought to the city jail, where he was detained for about five hours, then he was taken to the sheriff's office, then before the coroner's jury, and, after some questioning, he was released at about 5:30 o'clock in the evening. Subsequently plaintiff instituted the present suit.

While plaintiff, in his petition, charges that the appellants acted maliciously, there is no evidence in the record to support the allegation, and it is now practically undisputed that they acted in entire good faith and in an honest attempt to perform their public duty. Both appellants were peace officers, and the coroner, moreover, in the holding of the inquest, was acting in a judicial capacity. As officers of the law, they were endeavoring to ferret out and to arrest the perpetrator of a felony, and in the circumstances of this case we are unable to say that they did not have grounds for entertaining a reasonable belief that plaintiff was the guilty party, or that he was possessed of such knowledge of the facts as would lead to the apprehension of the guilty party. He was not subjected to any ill treatment, and it does not appear that his detention was longer than was reasonably necessary for an examination into the facts of the case.

[2] Those who seek the enforcement of law in the administration of justice, and who are supported by circumstances sufficiently strong to warrant a cautious man, in the belief that parties suspected may be guilty of the offense charged, should not be made unduly apprehensive that they will be held answerable in damages. Lyons v. Carroll, 107 La. 471, 31 So. 760.

"A citizen may arrest on reasonable suspicion of a felony, but in such case he must not only make out a reasonable ground of suspicion, but he must prove that a felony has actually been committed; whereas, an officer, who has reasonable grounds to suspect that a felony has been committed, may detain the party until inquiry may be made. Damages will not be allowed where the prosecuting officer acted in good faith and with probable cause. O'Malley v. Whittaker, 118 La. 914, 43 So. 545; Boutte v. Emmer, 43 La. Ann. 980, 9 South. 921, 15 L. R. A. 63." Dunson v. Baker, 144 La. 167, 80 So. 238.

For the reasons assigned, the judgment appealed from is affirmed.